BONNIE BELLE KOEHN ET AL., APPELLEES, V. ADELLA
MARTHA KOEHN ET AL., APPELLANTS.
81 N. W. 2d 900

Filed March 29, 1957.  No. 34143.

*John Peetz, Jr.,* and *F. L. Balderson,* for appellants.

*P. J. Heaton, Sr.,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action in equity brought in the district court for Cheyenne County by Bonnie Belle Koehn in her own behalf and as guardian of David Darrell Koehn and Dean William Koehn, minors, and P. J. Heaton, Jr., administrator of the estate of Darrell William Koehn, deceased, as plaintiffs, against Adella Martha Koehn and William Koehn, her husband, defendants. The purpose of the action was to quiet title in Bonnie Belle Koehn, David Darrell Koehn, and Dean William Koehn, the only heirs at law of Darrell William Koehn, deceased, to certain real estate; that possession of the real estate be delivered to P. J. Heaton, Jr., administrator of the estate of Darrell William Koehn, deceased; and that the defendants be required to account for all rentals collected from said premises. Trial was had to the court. The court found that the deceased left surviving him as his only heirs at law his widow, Bonnie Belle Koehn, and his two minor sons, David Darrell Koehn and Dean William Koehn; and that the plaintiffs were entitled to have quieted in them the title to the real estate here involved and that possession thereof be delivered to the administrator of the estate of the deceased. The defendants filed a motion for new trial which was overruled. From the order overruling the motion for new trial, the defendants have appealed.

The plaintiffs allege in their petition that at the time of his death, Darrell William Koehn was the owner of Lot 2, Block 1, Paine's Addition to Sidney; that the defendants were in control and possession of said premises and refused to relinquish possession of the premises to the plaintiffs; that the defendant Adella Martha Koehn claims title and right of possession in and to said premises by virtue of a deed delivered July 16, 1951; that the title to said premises was conveyed by Darrell

William Koehn and Bonnie Belle Koehn to Adella Martha Koehn; that William Koehn claims an interest and right of possession in the premises as the husband of Adella Martha Koehn; that the deed was in truth and fact a mortgage; that some time prior to July 16, 1951, the deceased executed and delivered a promissory note representing an indebtedness owing to the defendants; that to secure the promissory note Darrell William Koehn and his wife Bonnie Belle Koehn executed and delivered a deed to Darrell William Koehn and Adella Martha Koehn in survivorship with a distinct agreement and understanding and upon the condition that upon the payment of said debt Adella Martha Koehn would reconvey said premises to the grantors; that during the lifetime of Darrell William Koehn said indebtedness was paid in full and the interest of the defendants in the premises ceased; and that the defendants refused to reconvey said premises to the heirs of Darrell William Koehn, deceased.

The defendants allege in their answer that all rents collected by them were paid to the Sidney Federal Savings and Loan Association which holds a first mortgage on the premises; that the rents collected were paid to the association for the mutual benefit of all parties concerned; that the defendants have received no money as payment upon the indebtedness still existing for which a promissory note was made by Darrell William Koehn and given as security for money owing the defendants; and that there is due and owing the defendants by reason of such indebtedness the approximate amount of $3,693.75, including interest.

The defendants in their cross-petition, in substance, allege that if they have a mortgage only on the real estate described in the plaintiffs' petition, they are entitled to a strict foreclosure by reason of nonpayment of the indebtedness of Darrell William Koehn to them, as the deed was given as security for the debt. The amount of the indebtedness is set forth. The defendants

pray that the plaintiffs' action be dismissed and that title to the property described in the plaintiffs' petition be quieted in Adella Martha Koehn, subject only to the mortgage to the Sidney Federal Savings and Loan Association, or, in the alternative, the defendants be granted a strict foreclosure of the plaintiffs' equity of redemption and a judgment for any deficiency which may result by reason of such foreclosure.

The plaintiffs' reply to the answer and cross-petition was a general denial.

For convenience we will refer to the parties at times as they were designated in the district court; to Bonnie Belle Koehn as Bonnie; to the defendant Adella Martha Koehn either as Adella Koehn, or mother; to William Koehn as father; to Darrell William Koehn as Darrell or the deceased; and to P. J. Heaton, Jr., as administrator.

The secretary-treasurer and managing officer of the Sidney Federal Savings and Loan Association located in Sidney, hereafter called the loan company, who has charge of the records, testified that the loan company holds a mortgage on Lot 2, Block 1, Paine's Addition to Sidney, known as the Koehn property. The mortgage is dated July 19, 1951, and was for the sum of $6,500. The makers of the mortgage were Darrell Koehn, Bonnie Belle Koehn, William C. Koehn, and Adella Martha Koehn. The date of the distribution of the proceeds of the loan was October 5, 1951. This distribution consisted of checks which were issued and made payable as follows: Legal fees, or attorney's fees, $10; appraisal fee $10; abstracting and recording $14.25; check to the Thomas Lumber Company $2,348.12; check to Darrell Koehn for $3,250; and a check to Darrell and Adella Koehn for $867.63, making a total of $6,500. The amount due on the mortgage in July 1956 was $4,343.40. The loan company had received rental payments from the tenant on the premises which it applied to payment of taxes, interest, and insurance, and any excess there-

over was applied to the principal of the loan.

It was stipulated that the property was appraised August 25, 1951, at $10,000.

The administrator testified that the assets of the estate, by sale of the personal property, amounted to $904.71. The total claims filed against the estate amounted to $4,681.59. William Koehn and Adella Koehn filed a claim against the estate for $3,000, based on a promissory note. He had requested the parents of the deceased to turn over to him, as administrator, the personal property and effects belonging to the deceased at the time of his death, among which was a red Manila envelope containing some important papers, which he did not receive.

Bonnie Belle Koehn testified that she and Darrell were married August 22, 1948, and divorced in June 1954. The divorce had not become absolute at the time her husband was killed in a truck accident on November 4, 1954. She testified to the birth of the two minor children and that they were the beneficiaries of their father's insurance which had been collected for their benefit. At the time she was married to Darrell he owned Lot 2, Block 1, Paine's Addition to Sidney. There was a partially finished basement on the lot. During the period of their married life they built a house on the lot, which was completed in August 1951. She and Darrell did some considerable amount of work in the construction of the house. Later they procured a loan from the loan company. She furnished the administrator with a list of the personal property her husband owned at the time of his death, among which was a red Manila envelope containing his important papers. She was acquainted with the fact that Darrell's mother and father filed a claim for $3,000 against her husband's estate. This was for a note which represented the initial cost of the basement and a bill at the Cheyenne County Lumber Company. She did not sign the note. She further testified that she did participate in the ex-

ecution of a deed of this property to Darrell's mother, which was signed in an attorney's office; and that prior to signing the deed she had a conversation with Darrell and his mother, while the three of them were in a car en route to the attorney's office, in which she asked why the deed was going to be in Darrell's name and in his mother's name. She testified: "They told me it was to be sure we would pay them back the $3000. And I said, 'When it is paid then we will get it back in my name without any argument?' And Darrell said 'Yes', and Darrell's mother said 'Yes'." After that conversation she went to the attorney's office and executed the deed. She further testified as to payments made on the note. Darrell worked for his father part-time. He also worked for the fire department and for the police force, and in addition did some cement work. He had some back wages coming from his father as shown by time slips which she and Darrell went over and from which they made a computation and arrived at a figure of $800 or $900 they owed Darrell's parents. Darrell gave his mother $1,000, and Bonnie testified that she saw the receipt for this amount and that the receipt was among Darrell's personal belongings which were in the red Manila envelope. This computation was made about the time the loan was completed with the loan company. After the loan was completed, Darrell's parents did not make claim of ownership of the premises. They only did so after Darrell's death.

On cross-examination she testified that she was not present at the time the $3,000 note was made and delivered by Darrell to his folks, but Darrell told her about it the same day.

William Koehn testified, by deposition taken by the plaintiffs, that Darrell was not the owner of Lot 2, Block 1, Paine's Addition to Sidney; that Darrell and his mother were the owners; and that he bought the lot and later completed a basement house on it and made it livable. The property was purchased in 1948, and he

believed he paid $1,490 for it. He had a deed made out to Darrell. The house was completed in 1951. He engaged in cement work, gravel hauling, and excavating. Darrell did work for him, and was paid as anybody else who worked for him had been paid. He owed Darrell nothing. Darrell never paid him anything on the note. He further testified that he told Darrell the only way he could go ahead and build the house was to deed the property back to his mother and give him a note for the equity he had in the lot. It was at that time, or shortly after, that Darrell gave his father the note. He further testified that if Darrell had paid him, he would have let Darrell have the property, and that the deed was more or less a security measure. He further testified that he was never indebted to Darrell from 1948 up to the time of Darrell's death.

Adella Koehn, by deposition which was read in evidence by the plaintiffs, testified that on July 16, 1951, Darrell and Bonnie gave her a deed to Lot 2, Block 1, Paine's Addition to Sidney; that she had a conversation with Darrell, but not with Bonnie; that Darrell talked to Bonnie about the matter; and that the day they went to the attorney's office Bonnie was with them and made no objection in her presence to signing the deed. She further testified that she received no money from Darrell nor from the loan company; that she signed a note regarding the loan with the loan company, and Darrell took care of the money; and that the $3,000 note made out by Darrell was made out to both her and her husband.

Adella Koehn, the mother of the deceased, testified in her own behalf that she was the payee in the note given by her son; that she had received no payment on the note; and that in July 1951, a deed was executed and delivered giving her title as a joint tenant. This deed is in evidence and is the deed from Darrell and Bonnie to Darrell and Adella Koehn describing the premises involved in this action. She further testified that she never had any discussion with Bonnie in connection

with this transaction; that there was no agreement that if any indebtedness existed and was paid she would deed the property back; that since Darrell's death the rentals of the property have been paid to the loan company; and that she had been taking care of the property, seeing that it was rented, and maintaining the necessary repairs. She testified with reference to the repairs and the amounts expended therefor, and the accounting made with the loan company with reference thereto; and that Darrell lived with his parents at the time of his death.

On cross-examination she was requested by plaintiffs' counsel and by the court to produce the $3,000 note. The note was not produced. She further testified that it was a claim against Darrell's estate; that she owns the property here involved which she received by virtue of the deed for which she paid nothing; and that the day she and Darrell went to the attorney's office, Bonnie was in the car, but that she had no conversation with Bonnie.

The defendants contend that the trial court, over appropriate objections, erroneously permitted witnesses for the plaintiffs, having a direct legal interest in the result of the action, to testify with regard to certain transactions and conversations with deceased during his lifetime in violation of section 25-1202, R. R. S. 1943.

This is an equity case, and the cause is here for trial de novo.

Actions in equity, on appeal to this court, are triable de novo, subject, however, to the condition that when the evidence of material questions of fact is in irreconcilable conflict this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. See O'Brien v. Fricke, 148 Neb. 369, 27 N. W. 2d 403.

Section 25-1202, R. R. S. 1943, provides: "No person

having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness, unless the evidence of the deceased person shall have been taken and read in evidence by the adverse party in regard to such transaction or conversation, or unless such representative shall have introduced a witness who shall have testified in regard to such transaction or conversation, in which case the person having such direct legal interest may be examined in regard to the facts testified to by such deceased person or such witness, but shall not be permitted to further testify in regard to such transaction or conversation."

In construing section 25-1202, R. R. S. 1943, it was held in Mills v. Mills, 130 Neb. 881, 266 N. W. 759: "The testimony of a witness as to a transaction or conversation had by him with a person since deceased is inadmissible in any civil action or proceeding in the result of which such witness has a direct legal interest, when the adverse party thereto is the representative of such deceased person, unless and until the evidence of such deceased party, in regard to such transaction or conversation, shall have been taken and read in evidence by such representative, or unless the latter shall have first introduced a witness who shall have testified to such transaction or conversation." See, also, Rose v. Kahler, 151 Neb. 532, 38 N. W. 2d 391.

The principal part of the testimony of Bonnie Belle Koehn objected to by the defendants as being in violation of section 25-1202, R. R. S. 1943, is in substance as follows: That on July 16, 1951, this witness, Darrell, and his mother were en route to an attorney's office for the purpose of having Bonnie and Darrell execute a deed conveying the real estate in question in survivorship to Darrell and his mother; and that while in the car Bonnie asked Darrell's mother why the deed was

being taken in her name, and it was explained to Bonnie that it was to make sure the $3,000 debt would be repaid to Darrell's parents, and when that was done the property would be reconveyed to Bonnie in her name, to which her husband agreed. Subsequent to this conversation, Bonnie went to the attorney's office and executed the deed.

The rule with regard to the admissibility of evidence in an equity case tried to the court is that the presumption obtains that the court, in arriving at a decision, will consider such evidence only as is competent and relevant, and this court will not reverse a case so tried because other evidence was admitted, when there is material, competent, and relevant evidence admitted sufficient to sustain a judgment of the trial court. See Rose v. Kahler, *supra*.

Referring to the testimony of the mother of the deceased given in her own behalf, she testified that she owned the property by virtue of the deed executed and delivered to her; in addition, she had not been paid any amount on the $3,000 promissory note made by her son Darrell. This testimony, for the most part received without objection, related to the vital issues here involved.

In the light of the foregoing authorities and in considering the evidence, we conclude that the trial court did not err, as contended for by the defendants.

With reference to whether the deed here involved is a deed absolute or a mortgage, we deem the following to be applicable to a determination of this question.

Section 76-251, R. R. S. 1943, provides: "Every deed conveying real estate, which, by any other instrument in writing, shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage. The person for whose benefit such deed shall be made shall not derive any advantage from the recording thereof, unless every writing operating as a

defeasance, or explaining its effect as a mortgage, or conditional deed, is also recorded therewith and at the same time."

It is a well-settled principle that a court of equity will consider the purpose and not the form, and that the particular form or words of a conveyance are unimportant if the intention of the parties can be ascertained. See, Ashbrook v. Briner, 137 Neb. 104, 288 N. W. 374; Northwestern State Bank v. Hanks, 122 Neb. 262, 240 N. W. 281.

A deed of real estate, absolute in form, may be shown by parol to have been intended by the parties to it as security for a debt or loan, and as between such parties, at least, the instrument will be construed to be a mortgage. See Morrow v. Jones, 41 Neb. 867, 60 N. W. 369.

If an instrument is intended by the parties to be security for a debt it is in equity, without regard to its form or name, a mortgage. See Campbell v. Ohio National Life Ins. Co., 161 Neb. 653, 74 N. W. 2d 546.

The evidence in the instant case discloses that although the deed in question is absolute in form, it was intended by the parties as security for a debt, and as between such parties it will be construed as a mortgage.

The defendants contend that if the deed is construed as a mortgage, the evidence is insufficient to show payment of the note and they are entitled to a strict foreclosure.

The record discloses that the administrator made demand on the parents of the deceased for an envelope containing valuable papers belonging to the deceased. The administrator did not receive this envelope, so the papers pertinent to this case, if any, could not be produced. The testimony of Bonnie Belle Koehn is to the effect that after deducting the wages shown by the time slips and the $1,000 receipt signed by her husband's mother, which she saw for the last time in March 1954, there remained due on the note between $800 and $900 before the loan was obtained from the building and

loan association. The records of the loan company show that the mother and deceased son received $867.63 from the proceeds of the $6,500 loan; and that over and above all of the expenses of the loan, the materials paid for, and the payment to the mother and Darrell, the deceased received $3,250 in cash. It appears that the defendants made no attempt to exercise dominion over the property until after the son's death. We consider this evidence sufficient to determine that the son's debt to his parents was paid, and so find.

For the reasons given in this opinion, we conclude that the judgment of the trial court should be, and it is, affirmed.

AFFIRMED.