KERRY WHIPPLE AND CAROLEE WHIPPLE, HUSBAND AND WIFE,
APPELLEES, V. THE COMMERCIAL BANK OF BLUE HILL,
A NEBRASKA CORPORATION, ET AL., APPELLANTS.

572 N.W. 2d 797

Filed December 16, 1997.    No. A-96-480.

Steven G. Seglin and D. Bryan Wickens, of Crosby, Guenzel,
Davis, Kessner & Kuester, and Ted S. Griess, of Baird &

Griess, for appellants Commercial Bank of Blue Hill and Ash Hollow Developers, Inc.

Robert J. Parker, Jr., of Seiler, Parker & Moncrief, P.C., for appellees.

HANNON, IRWIN, and INBODY, Judges.

HANNON, Judge.

The instant case is a foreclosure action brought by Kerry Whipple and Carolee Whipple, husband and wife, against The Commercial Bank of Blue Hill (TCB) and Ash Hollow Developers, Inc. (AHDI), hereinafter referred to collectively as "the defendants." Both TCB and the Whipples had liens on a golf course owned by William and DeEtta Richards. TCB's lien was senior to that of the Whipples' when the Richardses conveyed the golf course to TCB in consideration of TCB's forgiveness of the Richardses' debt. TCB later conveyed the property to AHDI. The Whipples then brought this action to foreclose their mortgage and moved for summary judgment. The trial court concluded that under Neb. Rev. Stat. § 76-274 (Reissue 1996), TCB's lien on the property merged with the fee title when TCB conveyed the property to AHDI, leaving the Whipples' lien as first in priority. It therefore found the Whipples' mortgagee to be a first lien and granted their motion for summary judgment of foreclosure. The defendants now appeal. We conclude that merger did not occur by virtue of § 76-274 but that TCB's forgiveness of the Richardses' debt with knowledge of the Whipples' intervening lien operated to extinguish TCB's deed of trust under the common law. Thus, we affirm.

## UNDISPUTED FACTS

The Whipples purchased Ash Hollow, a golf course located in Blue Hill, Nebraska, in 1987. In order to finance their purchase and a subsequent improvement, the Whipples became indebted to TCB in the amount of $97,200. On January 22, 1993, the Whipples sold Ash Hollow to the Richardses; the details of which are contained in the record. In order to finance the purchase and subsequent operation of the golf course, the Richardses borrowed $93,500 (evidenced by promissory notes

of $77,500 and $16,000) from TCB and $18,000 (evidenced by a promissory note for $18,000) from the Whipples. Both loans were secured by deeds of trust. The Whipples' deed of trust was recorded last and was intended to be inferior to that of TCB. Both deeds of trust were notarized on February 6, 1993, by Rolland K. Grandstaff, vice president of TCB.

In 1993, William Richards became mortally ill, and the Richardses faced bankruptcy. On August 6, 1993, the Richardses conveyed Ash Hollow to TCB for the stated consideration of "forgiveness of debt." The standard covenants normally used in deeds to warrant title were obliterated by asterisks being superimposed on them. The details of the transaction will be discussed later when we consider its significance. On the face of both of the Richardses' promissory notes to TCB, "THE COMMERCIAL BANK-BLUE HILL, NEBRASKA," was stamped, followed by "Forgiveness of Debt by /s/ Gerald Koepke 8-6-93."

On March 5, 1994, TCB conveyed Ash Hollow to AHDI, a corporation in which Gerald Koepke, the president and chief executive officer of TCB, was an incorporator and holder of a 25-percent interest. Koepke admitted that AHDI was formed to buy Ash Hollow from TCB. In the corporation warranty deed, TCB covenanted that it was lawfully seized of Ash Hollow and that Ash Hollow was free from encumbrances. TCB also warranted title.

The Whipples then brought this action against the defendants to foreclose on Ash Hollow. The Whipples prayed for an order declaring their lien to be first and paramount, determining the amount of the lien, and foreclosing on the property in the statutory form. The defendants then filed a cross-petition, praying that the court determine that the Whipples' deed of trust was of no value and further praying that the court quiet title to Ash Hollow in AHDI. The Whipples then moved for summary judgment. The district court concluded that pursuant to § 76-274, TCB's lien interest merged with the fee on March 5, 1994, the day that TCB conveyed Ash Hollow to AHDI. Consequently, the court concluded that TCB's lien was released, thus elevating the Whipples' lien to first in priority. The court granted the Whipples' motion for summary judgment and ordered foreclosure by the statutory procedure. The defendants now appeal.

## ASSIGNMENTS OF ERROR

The defendants generally contend that the court erred in granting the Whipples' motion for summary judgment. Specifically, the defendants argue that the court erred in concluding that TCB's lien merged with the fee upon TCB's conveyance of the property to AHDI.

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Schendt v. Dewey*, 252 Neb. 979, 568 N.W.2d 210 (1997).

■ On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts. *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997).

## ANALYSIS

■ The instant case revolves around the deeds of trust issued by the Richardses to TCB and the Whipples. If an instrument is intended by the parties to be security for a debt, it is in equity, without regard to its form or name, a mortgage. *Koehn v. Koehn*, 164 Neb. 169, 81 N.W.2d 900 (1957). A trust deed may be foreclosed in the manner provided by law for the foreclosure of mortgages on real property. Neb. Rev. Stat. § 76-1005 (Reissue 1996). See, also, *PSB Credit Servs. v. Rich*, 4 Neb. App. 860, 552 N.W.2d 58 (1996). We shall therefore apply the law applicable to mortgages in considering the issues of this case. We first consider the statute that the trial court found to be controlling.

### *Merger Under § 76-274.*

The trial court concluded that § 76-274 caused a merger of the title with TCB's lien when it conveyed Ash Hollow to AHDI

on March 5, 1994. We do not agree. Section 76-274 provides as follows:

> Whenever an interest in the fee title to any real estate in this state and an interest in a mortgage or other lien affecting the same interest shall become vested in the same person, and such person subsequently conveys such fee title by deed, unless a contrary intent is expressed by the terms of such deed, it shall be conclusively presumed in favor of subsequent purchasers and encumbrancers for value and without notice, that such lien interest merged with the fee and was conveyed by such deed and that such lien was thereby released from the fee interest so conveyed.

Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Metropolitan Utilities Dist. v. Balka*, 252 Neb. 172, 560 N.W.2d 795 (1997). Despite the Whipples' protestations to the contrary, they are not subsequent encumbrancers. The statute is clear—merger occurs under it only when a person who has an interest in the fee title and an interest in a lien subsequently conveys the fee title to a third person. Thus, the action bringing about the merger is the subsequent conveyance, which in this case was TCB's conveyance to AHDI and not, as the Whipples contend, the fact that they recorded their lien after TCB recorded its lien. AHDI is a subsequent purchaser under § 76-274, but it was not without notice of TCB's lien. It is undisputed that at the time TCB conveyed the property to AHDI, Koepke, who was both president of TCB and owner of a 25-percent interest in AHDI, had actual notice of TCB's lien, as well as the Whipples' lien. Therefore, § 76-274 cannot be used for purposes of merger in the instant case.

*Merger Under Common Law.*

In the instant case, TCB held a first lien on Ash Hollow and later acquired fee title to it. As a result of the transactions involved in this case, both parties have devoted the majority of their briefs to a discussion of the merger doctrine in the context of mortgages. This is not without a basis. It has been a long-standing proposition of mortgage law in Nebraska that ordinar-

ily, when a mortgagee becomes the owner of the fee, the former estate is merged in the latter. *Wietzki v. Wietzki*, 231 Neb. 551, 437 N.W.2d 449 (1989); *Overland-Wolf, Inc. v. Koory*, 183 Neb. 611, 162 N.W.2d 889 (1968); *Edney v. Jensen*, 116 Neb. 242, 216 N.W. 812 (1927). The question presented in this case is what the effect of an intervening lien has on the application of that doctrine.

The merger doctrine, as applied to mortgages, has generally been described as follows:

> Ordinarily, a transfer of the interest of the mortgagor in mortgaged property to the mortgagee operates as a merger of the two estates, which effects a discharge of the mortgage and satisfaction of the debt . . . . This rule, however, is subject to exceptions, and courts of equity will not follow it where justice requires the lien to be preserved in order to protect a right.

55 Am. Jur. 2d *Mortgages* § 1340 at 734 (1996).

General authority recognizes that the question of merger is primarily a question of intention and that merger will not take place where there is an intention to keep the mortgage alive or, in the absence of a showing of an intention to the contrary, where the mortgage is necessary to protect the mortgagee from intervening claims or liens of third persons. *Id.*, §§ 1342 and 1345.

> In this regard, it has been held that an intent to effect a merger is indicated where, after acquiring the equity, the mortgagee conveys the property to an unrelated party, constituting convincing evidence that the mortgagee intended to effect a merger so that the complete fee then could be transferred to the third party.

*Id.*, § 1345 at 737-38. This portion of the merger doctrine appears to be embodied in § 76-274, which we have already dismissed as inapplicable to the instant case.

General authority further recognizes that the conveyance of the mortgaged property to the mortgagee in satisfaction of the mortgage debt does not necessarily operate as a merger when the mortgagee is ignorant of the junior lien. "A different result has, however, been reached where the mortgage was discharged with knowledge of the intervening lien . . . ." 55 Am. Jur. 2d, *supra*, § 1350 at 741.

These general principles of merger comport with Nebraska's view:

"Ordinarily, when one having a mortgage on real estate becomes the owner of the fee the former estate is merged in the latter.

"But the mortgagee may in such case keep his mortgage alive when it is essential to his security against an intervening title. If there was no expression of his intention in relation to the matter at the time he acquired the equity of redemption, it will be presumed, in the absence of circumstances indicating a contrary purpose, that he intended to do that which would prove most advantageous to himself."

. . . .

"It is presumed, as [a] matter of law, that the party must have intended to keep on foot his mortgage title, when it was essential to his security against an intervening title, or for other purposes of security; and this presumption applies although the parties, through ignorance of such intervening title, or through inadvertence, have actually discharged the mortgage and canceled the notes, and really intended to extinguish them."

*Edney v. Jensen*, 116 Neb. at 247, 216 N.W. at 814. See, also, *First State Savings Bank v. Martin*, 131 Neb. 403, 268 N.W. 281 (1936).

In contrast to these well-established propositions, the drafters of the Restatement (Third) of Property § 8.5 (1997) have concluded that the merger doctrine is inapplicable to mortgages. At the same time, however, the drafters have recognized that courts continue to apply the doctrine in this context:

As applied in the mortgage setting, the theory holds that when a mortgagee's interest and a fee title become owned by the same person, the lesser estate, the mortgage, merges into the greater, the fee, and is extinguished unless the holder intends a contrary result. This extension of the merger principle has created one of the most complex, confusing, and frequently litigated areas of mortgage law.

*Id.*, § 8.5, comment *a.* at 608. The case at hand is an example of that complexity.

The drafters of the Restatement present the reader with two illustrations that resolve the issues presented in the instant case

without resorting to the merger doctrine. See *Id.*, § 8.5, comment *b.*, illustrations 1 and 6. The basic facts underlying both illustrations are that the senior of two mortgagees takes a deed to the mortgaged property from the mortgagor in exchange for which the senior mortgagee releases the mortgagor from liability. In the illustration where the senior mortgagee had no knowledge of the second or intervening lien at the time of the release, the senior mortgagee could foreclose on the property. However, as in the illustration noted, where the senior mortgagee did have knowledge of the intervening lien at the time of the release, the senior mortgagee could not foreclose on the property.

Clearly, the decisive factor was the senior mortgagee's knowledge of intervening liens at the time it accepted the deed and released the mortgagor. It was also the decisive factor in *Edney v. Jensen*, 116 Neb. 242, 216 N.W. 812 (1927), and *First State Savings Bank v. Martin, supra*, although it was decided in the context of the merger doctrine. In *Edney*, the senior mortgagee, who had two mortgages on certain property, took a deed to that land from the mortgagor and, in exchange, executed releases of the two mortgages. Unbeknownst to the senior mortgagee, the mortgagor had given a mortgage on the same property to a third party. After discovering the third party's mortgage, the senior mortgagee brought suit to foreclose his two mortgages. The trial court found that the senior mortgagee had no knowledge of the third party's mortgage when he executed the releases, and consequently, it granted the senior mortgagee's petition of foreclosure. In affirming the trial court's judgment, the Nebraska Supreme Court stated that the only factual question of consequence was whether the senior mortgagee had actual knowledge of the third party's mortgage at the time that he consummated the settlement with the mortgagor. The *Edney* court resolved that fact question in favor of the senior mortgagee.

In *First State Savings Bank v. Martin, supra*, the bank took a deed in satisfaction of a mortgage, but the abstractor it hired to check the title failed to discover a judgment that was an intervening lien. After so discovering, the bank filed an action for reinstatement of its lien and then for foreclosure. The judgment holder argued that the bank was negligent in not learning of the judgment lien. The Nebraska Supreme Court rejected that argu-

ment and held that the bank's lack of actual knowledge was sufficient. The court concluded that the bank had discharged its lien under a mistake of fact—that the intention of the bank was not to subject its lien to the lien of the judgment creditor. Thus, the court affirmed the trial court's order reinstating the lien and decreeing foreclosure.

We have found no cases where the senior mortgagee was found to have had actual knowledge of an intervening lien. However, in both *Edney* and *First State Savings Bank*, the Nebraska Supreme Court necessarily implied that the senior mortgagee's knowledge of any intervening liens at the time of the release or forgiveness of debt is the crucial factor. Thus, we conclude that there is a corollary to the general rule that lack of knowledge of an intervening lien prevents merger: When a mortgagee takes a deed from the record titleholder in consideration of the forgiveness of the mortgage debt with knowledge of an intervening lien, the mortgage debt is forgiven and the lien securing that debt is canceled as against the intervening lien.

We now review the evidence to determine if there is a genuine issue of material fact as to TCB's actual knowledge of the Whipples' lien when TCB took the deed in consideration for its forgiveness of their obligation. In her deposition, DeEtta Richards testified that she and her husband met with Koepke, president and chief executive officer of TCB, on the evening of August 6, 1993, and made, executed, and acknowledged the deed to TCB at that time for forgiveness of their debt. She testified that "[h]e told us that that gave them the right to take and sell the property and to handle all of the dealings with it; that we were out of it; that it was a forgiveness of debt, we didn't owe anybody on that property." She also testified that when Koepke asked them to sign a warranty deed they questioned how they could do so in view of the "second mortgage." According to DeEtta Richards, her husband asked if they could put in the deed that they still owed the Whipples, and Koepke said that the bank's attorneys would take care of that. When she mentioned that she would go and tell the Whipples of the transaction, Koepke asked her not to and told her that he would contact them. If believed, this evidence would clearly establish that the president and chief executive officer of TCB knew of the

existence of the Whipples' lien when he made the deal on behalf of TCB.

■ In his deposition, Koepke denied that the Whipples' lien had been discussed at the meeting with the Richardses. Without more, this would create an issue of fact that would prevent summary judgment. However, Koepke did admit that Grandstaff, vice president of the bank and a member of the board of directors, had acknowledged the deed of trust to the Whipples and knew about the Whipples-Richardses' transaction. Additionally, Grandstaff notarized the deed of trust to the Whipples.

> [W]here a director or officer has knowledge of material facts respecting a proposed transaction, which his relations to it as representing the bank have given him, it becomes his official duty to communicate that knowledge to the bank, and he will be presumed to have done so and his knowledge will be imputed to the bank, and this presumption cannot be rebutted by showing that the knowledge of such facts was not actually transmitted to the bank[.]

*Professional Recruiters v. Oliver*, 235 Neb. 508, 517, 456 N.W.2d 103, 108-09 (1990), citing 10 Am. Jur. 2d *Banks* § 163 (1963). There is no doubt that between Koepke and Grandstaff, they had actual knowledge of the Whipples' intervening lien. Clearly then, TCB had actual knowledge of the Whipples' intervening lien. The evidence conclusively establishes that TCB did not forgive the promissory notes inadvertently.

■ Consequently, TCB's forgiveness of the Richardses' debt on August 6, 1993, was effective. It has long been the rule in Nebraska that a mortgage is a mere security and has no efficacy if unaccompanied by a debt or obligation. *County of Keith v. Fuller*, 234 Neb. 518, 452 N.W.2d 25 (1990); *Columbus Land, Loan & Bldg. Assn. v. Wolken*, 146 Neb. 684, 21 N.W.2d 418 (1946). As a result, the lien of the deed of trust ceased to exist, and the Whipples' mortgage was elevated to first in priority. There is no genuine issue of fact, and the Whipples are therefore entitled to a determination that their lien is a first lien. Neither party questions any other determination embodied in the court's summary judgment of foreclosure. We therefore affirm.

AFFIRMED.