Manesh PATEL and Chandu Patel; Kanti Patel and Sulabha Patel, husband and wife; and Key Bank Of Wyoming—sheridan, f/k/a First Wyoming Bank—Sheridan, Appellants (Third–Party Defendants),

v.

Zarif KHAN and Shamin Khan, husband and wife, Appellees (Third–Party Plaintiffs).

No. 97–84.

Supreme Court of Wyoming.

Dec. 15, 1998.

Anthony T. Wendtland of Davis & Cannon, Sheridan, for Appellants.

Barry G. Williams of Williams, Porter, Day & Neville, P.C., Casper, for Appellees.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

LEHMAN, Chief Justice.

Manesh and Chandu Patel, Kanti and Sulabha Patel, and Key Bank (collectively, appellants) challenge the district court's entry of summary judgment in favor of appellees, Zarif and Shamin Khan (Khans), in a third-party claim for breach of implied covenants in a warranty deed. Appellants also contend the district court erred in awarding Khans the settlement amount paid to the plaintiff in the underlying claim. We affirm.

## ISSUES

Appellants present the following issues:

I. Were Khans constructively evicted from the Motel property by Patrick Green ("Green") at a time when Green possessed a paramount claim to title?

II. Does Khans' unauthorized settlement with Green preclude them from recovering against Patels and Key Bank for breach of warranty under W.S. § 34-2-102 (July 1990 Repl.)?

The Khans phrase the issues as follows:

A) Was the district court proper in its finding that a breach of implied warranty had occurred?

B) Were the third-party defendants (Appellants here) liable to the third-party plaintiffs (Appellees here) in the amount so found by the district court?

## FACTS

The undisputed facts begin with the sale of a motel in 1984 to James and Dorothy Prell. While negotiating the sale, the Prells informed their lender, First Wyoming Bank (Bank),[1] that they also owed a debt to Patrick Green. Upon agreement among the

---

* Chief Justice at time of expedited case conference; retired November 2, 1998.

1. During the course of these proceedings, the First Wyoming Bank became Key Bank of Wyoming. To avoid confusion, we use the generic term "Bank" when referring to both.

Prells, the Bank, and Green, the Prells executed a first mortgage to the Bank and a second mortgage to Green as security for the debts. Both mortgages were duly recorded.

In 1986, the Bank instituted a foreclosure action on the property but did not join Green as a party to the action. The Bank then purchased the property at the foreclosure sale and became the full owner when the Prells did not redeem within the statutory time limit. In April 1987, the Bank conveyed the property by warranty deed to Kanti and Sulabha Patel. The warranty deed did not mention Green's mortgage. In 1989, Kanti and Sulabha transferred possession of the property to Manesh Patel and Chandu Patel on a contract for deed. In 1991, having learned of the sale to Kanti and Sulabha, Green contacted them and informed them of his mortgage interest. Although there was correspondence among Kanti and Sulabha, their title insurer, and Green's attorney, no action was taken to satisfy the secured debt.

On September 30, 1993, Kanti and Sulabha conveyed the property to Manesh and Chandu. At the same closing, Manesh and Chandu conveyed the property to Zarif and Shamin Khan. Both conveyances were by warranty deed; neither deed mentioned Green's mortgage. Nor did the Patels orally inform the Khans of Green's claim.

When the note remained unpaid in June 1994, Green filed a judicial foreclosure suit against the property, naming as defendants the Khans and their lender, First Interstate Bank of Commerce. Shortly thereafter, the Khans filed a third-party claim against all the Patels and the Bank, alleging breach of the implied covenants in the warranty deed. After discussions among counsel for the Khans, the Patels, and the Bank, the third-party defendants (appellants) filed a motion for summary judgment, maintaining the warranty deed did not cover Green's mortgage interest. In the alternative, they alleged Green had no valid right to foreclose without first redeeming the property in the initial foreclosure, and therefore there was no valid encumbrance on the property.

After being informed of the theories espoused by Patels and the Bank, the Khans elected to settle with Green, and subsequently filed an amended complaint on April 24, 1995, seeking reimbursement for the settlement amount. The Khans then filed a cross-motion for summary judgment. After a hearing on the motions for summary judgment, the district court found no issue of material fact and held the Khans were entitled to summary judgment as a matter of law. The district court entered its order on February 27, 1997, and this timely appeal followed.

## STANDARD OF REVIEW

■ Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c). This court evaluates the propriety of summary judgment using the same standards and materials used by the district court, affording no deference to the district court's decision on issues of law. *Ahearn v. Anderson–Bishop Partnership*, 946 P.2d 417, 421–22 (Wyo.1997). A grant of summary judgment may be affirmed on any proper legal grounds supported by the record. *Id.* at 422.

## DISCUSSION

The issue in this case is whether, as a matter of law, the property was encumbered by Green's mortgage at the time Manesh and Chandu Patel conveyed it to the Khans. Wyoming Statute 34–2–103 (1997) provides:

Every deed in substance in the above form [§ 34–2–102], when otherwise duly executed, shall be deemed and held a conveyance in fee simple, to the grantee, his heirs and assigns, with covenants on the part of the grantor, (a) that at the time of the making and delivery of such deed he was lawfully seized of an indefeasible estate in fee simple in and to the premises therein described, and had good right and power to convey the same; (b) *that the same were then free from all incumbrances;* and (c) that he warrant to the grantee, his heirs and assigns, the quiet and peaceful possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same. And such covenants shall be obligatory

upon the grantor, his heirs and personal representatives, as fully, and with like effect as if written at length in such deed. (Emphasis added.)

█ "[A] mortgage lien is an encumbrance." 14 RICHARD R. POWELL & PATRICK J. ROHAN, POWELL ON REAL PROPERTY ¶ 900[2], at 81A–136 (1998). A mortgage lien is a claim which is enforceable against the land if the obligation which it secures is not otherwise paid. Any violation in the nature of a lien or charge on the land is also a violation of the covenant that the property is free from all encumbrances. *Id.* at 81A–137. "Such a claim reduces the value of the land because a purchaser, in order to protect the land from foreclosure or execution, must pay the amount of the obligation." *Id.*

█ To assert a claim for breach of the covenant, the grantee must suffer an eviction under a paramount title. Actual or constructive eviction is sufficient. *Id.* at 81A–142–43. In this case, the Khans were never physically evicted from the property, but they claim a constructive eviction by virtue of Green's foreclosure action. Constructive eviction occurs when "there is a positive assertion of paramount title and the grantee rightfully yields to the holder of that title * * * by purchasing the paramount title or satisfying the encumbrance." *Id.* at 81A–143. Appellants agree that Green's foreclosure action is a positive assertion of paramount title, but maintain that Green's claim is not valid. According to appellants, Green's interest remained junior to the Bank's first mortgage; thus to foreclose, he must first equitably redeem the property. We disagree.

█ Despite the appellants' assertions to the contrary, the Bank's mortgage interest no longer existed at the time the Khans received title; therefore, Green's mortgage had priority over all other liens on the property. When a junior lienholder is not made a party to a foreclosure, the junior interest is not bound by the foreclosure decree, and the lienholder is entitled to exercise his rights as if the foreclosure had never taken place. *Bolln v. LaPrele Live Stock Co.,* 27 Wyo. 335, 341, 196 P. 748, 749 (1921); 4 POWELL & ROHAN, *supra,* § 37.37[13], at 37–260.

█ Although Green's mortgage interest was not diminished by the foreclosure and subsequent sale to the Bank because he was not made a party to the action, the Bank's mortgage was affected by the doctrine of merger. A mortgage lien vests the mortgagee with an equitable interest, while the mortgagor retains legal title to the property. *Bolln,* 27 Wyo. at 341, 196 P. at 749. When the subsequent actions of the parties indicate an intention to combine both the legal and equitable interests in one person, the interests will merge and the lien is terminated. *Id.* at 343–44, 196 P. at 749–50; *First Southwestern Fin. Servs. v. Laird,* 882 P.2d 1211, 1216 (Wyo.1994) (*quoting* THOMPSON ON REAL PROPERTY § 4798, at 46 (1981 Supp.) ("Joinder of the ownership in land and of the lien thereon in one person creates a merger and terminates the lien.")).

█ Here, the Bank purchased the property after foreclosure and received the Prells' legal title subject to the Prells' right of redemption. When the Prells failed to redeem, both legal and equitable interests vested in the Bank. The Bank's subsequent action, the sale to Kanti and Sulabha, demonstrated an intent that the legal and equitable interests merge, thus terminating the Bank's lien.

General authority recognizes that the question of merger is primarily a question of intention and that merger will not take place where there is an intention to keep the mortgage alive or, in the absence of a showing of an intention to the contrary, where the mortgage is necessary to protect the mortgagee from intervening claims or liens of third persons.

In this regard, *it has been held that an intent to effect a merger is indicated where, after acquiring the equity, the mortgagee conveys the property to an unrelated party, constituting convincing evidence that the mortgagee intended to effect a merger so that the complete fee then could be transferred to the third party.* [55 AM.JUR.2D *Mortgages* ] § 1345 at 737–38. * * *

General authority further recognizes that the conveyance of the mortgaged property to the mortgagee in satisfaction

of the mortgage debt does not necessarily operate as a merger when the mortgagee is ignorant of the junior lien. "A different result has, however, been reached where the mortgage was discharged with knowledge of the intervening lien. * * * " 55 AM.JUR.2D [*Mortgages*] § 1350 at 741 [1996].

*Whipple v. Commercial Bank of Blue Hill,* 6 Neb.App. 249, 572 N.W.2d 797, 801 (Neb. App.1997) (emphasis added and citation omitted).

It is uncontested that Green's junior mortgage was created with the Bank's knowledge; and, therefore, the Bank's conveyance to Kanti and Sulabha was clearly consummated with knowledge of the junior interest. The result was a merger terminating the Bank's lien, and the elevation of Green's interest to that of senior lienholder. *See Whipple,* 572 N.W.2d at 802–03 ("When a mortgagee takes a deed from the record titleholder * * * with knowledge of an intervening lien, the mortgage debt is forgiven and the lien securing that debt is canceled as against the intervening lien."). Consequently, Green had a valid and enforceable lien on the property at the time it was transferred by warranty deed from the Bank to Kanti and Sulabha, which remained in effect when the property was transferred from Kanti and Sulabha to Manesh and Chandu and, finally, from Manesh and Chandu to the Khans.

▮ The object of the covenant against encumbrances is to indemnify a purchaser for any encumbrance on the property which must be satisfied or removed. 14 POWELL & ROHAN, *supra,* ¶ 900[4], 81A–148. Upon Green's assertion of his rights against the Khans in the underlying lawsuit, the Khans suffered a constructive eviction when they yielded to Green's paramount title. Thus, Green's encumbrance at the time of the Patels' conveyance to the Khans breached the implied covenants in the warranty deed as a matter of law.

▮ Appellants' claim that the Khans wrongfully settled with Green is equally without merit. It is true that when the Khans elected to settle with Green, they took the chance that the Bank or the Patels could have successfully defended against Green's claims. If a successful defense had been tendered even after settlement or judgment as between the Khans and Green, the Khans could not seek redress from appellants because there would be no breach. In this case, however, appellants had the opportunity to resist Green's claim through their motion for summary judgment, but they failed to present a successful defense.

▮ The normal method of measuring damages for a breach of the covenants in the warranty deed is to award the purchaser the amount that he or she has incurred in removing the defect. 14 POWELL & ROHAN, *supra,* ¶ 900[4], at 81A–148. Because Green's claim was valid, and the Khans were forced to pay to prevent actual eviction, the Khans were appropriately awarded reimbursement for their payment to Green.

### *CONCLUSION*

The Bank's mortgage lien terminated when, after it acquired both the equitable and legal interest to the property, and with knowledge of the junior lien, the Bank proceeded to sell the property to a third party. Upon termination of the Bank's mortgage interest, Green's mortgage interest remained in effect and was validly asserted when the note was due. The Khans rightfully yielded to Green's claim and were entitled, as a matter of law, to seek redress from the Patels and the Bank for a breach of the covenant warranting transfer of the property free from all encumbrances. The district court's entry of summary judgment in favor of the Khans is affirmed.