ROBERT W. HYDE ET AL., APPELLEES, V. IRVING
SHAPIRO ET AL., APPELLANTS, HARRY D. NICOLA,
APPELLEE.
346 N.W.2d 241

Filed March 16, 1984. No. 83-196, 83-234.

Jim Zimmerman of Atkins, Ferguson, Zimmerman, Carney & Law, for appellant Shapiro.

Robert M. Brenner of Brenner and Meister Law Office, for appellant Vickery.

Robert W. Mullin of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellees Hyde et al.

KRIVOSHA, C.J., CAPORALE, and GRANT, JJ., and CAMP, D.J., and COLWELL, D.J., Retired.

KRIVOSHA, C.J.

Irving Shapiro and Harry Vickery appeal from a

judgment entered by the district court for Scotts Bluff County, Nebraska, in favor of the appellees, Robert W. Hyde, William S. Whitehead, John C. Hawkins, Jr., Donn C. Raymond, and Jerome A. Fuhrman. The judgment was entered against Harry D. Nicola as well, but Nicola has not appealed and is not involved in this matter. We believe that the action of the trial court was correct and should be affirmed.

The suit involved in this appeal was in the form of a declaratory judgment action asking the court to determine the enforceability of a contribution agreement signed by Shapiro and Vickery. The appellants, Shapiro and Vickery, maintain that the trial court erred in entering a judgment against them and in favor of the appellees because of a failure of consideration. The record discloses that all of the parties to this action were business associates in a restaurant enterprise known as Grampy's. The business entity consisted of a partnership known as Grampy's of Scottsbluff and a corporation known as Grampy's International, Inc. The partnership, which was created on February 5, 1973, consisted originally of appellees Hyde, Whitehead, Hawkins, and Raymond, but neither of the appellants. The corporation, which was formed on February 23, 1973, consisted of the appellees and appellant Vickery as original shareholders. Appellant Shapiro became a stockholder at a later time. On April 2, 1973, the partnership assigned to the corporation a licensing agreement and the exclusive right to do business under the trade name "Grampy's." In return for the assignment the partnership was to receive from the corporation a royalty of .0075 percent on all gross sales generated by any owned or franchised Grampy's restaurant. The royalties were to be distributed to the partners at least every 3 months. By at least June of 1979 the corporation encountered some financial difficulties and required additional funds. Shapiro and Vickery offered to provide cer-

tain of this additional funding, provided that they were made members of the partnership, as well as being stockholders in the corporation, thereby entitling them to a share of the royalties. The existing partners agreed to create a new partnership consisting of all of the former partners plus Shapiro and Vickery, provided that the new partners agreed to sign a certain contribution agreement. The books of the old partnership were to be closed and adjusted showing the new interests. All assets of the old partnership, except the royalties accrued prior to August 1, 1979, were to be shared among the newly formed group. In all other respects the original partnership agreement executed on February 5, 1973, was to remain in effect.

Both the partnership agreement and the contribution agreement made it clear that the consideration for the new partnership was an agreement by Shapiro and Vickery to sign the contribution agreement. The language of the amended partnership agreement specifically provided in part as follows: "WHEREAS, it is the desire of all parties to this Agreement to reorganize the partnership for purposes of admitting new partners *on the sole consideration* that they sign and execute a Contribution Agreement . . . ." (Emphasis supplied.) And, likewise, the contribution agreement stated in part: "[I]t is the intention of all of the undersigned to become equal partners . . . in the above-referred Partnership, which has been amended . . . to include the undersigned as equal partners, *solely upon the consideration* that each of the undersigned will execute this Contribution Agreement indemnifying the partners or stockholders who have signed prior guaranty agreements securing . . . the Corporation." (Emphasis supplied.)

Shapiro and Vickery now maintain that they are not bound by the contribution agreement because there has been a total failure of consideration because the partnership failed and, as a result, they

did not receive the royalties which they expected to receive. That is, they maintain that the sole consideration for signing the contribution agreement was the promise that they would receive royalties and, not having received them, they are entitled to be relieved of any obligation under the contribution agreement. Just as the trial court did not accept that argument, neither do we.

There is no question that there was adequate consideration for the execution of the contribution agreement in the first instance. While the consideration may not have proved ultimately to be of benefit to Shapiro and Vickery, this is not significant. The distinction between whether there was sufficient consideration and its value to Shapiro and Vickery becomes relevant as we review the case. In the case of *Omaha Nat. Bank v. Goddard Realty, Inc.*, 210 Neb. 604, 609-10, 316 N.W.2d 306, 309-10 (1982), we set out the rules with respect to consideration, saying: "There appears to be no precise statement as to what constitutes consideration for an agreement other than the general declaration that in order for there to be consideration for an agreement there must be a benefit to one of the parties or a detriment to the other. See, *Commuter Developments & Investments, Inc. v. Gramlich*, 203 Neb. 569, 279 N.W.2d 394 (1979); *Dorland v. Dorland*, 175 Neb. 233, 121 N.W.2d 28 (1963). What that benefit/detriment must be or how valuable it must be varies from case to case. It is clear, however, that even 'a peppercorn' may be sufficient. In *Asmus v. Longenecker*, 131 Neb. 608, 269 N.W. 117 (1936), we said: ' "A valuable consideration to support a contract need not be one translatable into dollars and cents; it is sufficient if it consists of the performance, or promise thereof, which the promisor treats and considers a value to him." . . . "A valuable consideration may consist either in some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or

undertaken by the other." ' *Id.* at 611, 269 N.W. at 119. . . .

" ' "There is a sufficient consideration for a promise if there is any benefit to the promisor or any detriment to the promisee. A benefit need not necessarily accrue to the promisor if a detriment to the promisee is present, and there is a consideration if the promisee does anything legal which he is not bound to do or refrains from doing anything which he has a right to do, *whether or not there is any actual loss or detriment to him or actual benefit to the promisor.*" ' (Emphasis supplied.) *Phelps v. Blome*, 150 Neb. 547, 555, 35 N.W.2d 93, 97 (1948). . . .

". . . The question of consideration in this state has never been dependent upon whether the promisor considered the benefit received sufficient, but only whether, as a matter of law, the promisee suffered a detriment or did anything which he was not otherwise required to do, no matter how significant in fact was the detriment or promise. We are unable to say that, as a matter of law, an agreement knowingly entered into by and between two sophisticated parties should now be set aside because the consideration given for the agreement was not what one of the parties considers of particular value."

In the instant case it seems clear beyond question that the consideration for executing the contribution agreement was not the receiving of royalties but, rather, the admitting of Shapiro and Vickery into the partnership. Certainly, the existing partners did not have to admit additional partners, and by doing so they diminished their interests in the partnership and suffered a detriment. That the partnership agreement did not ultimately prove to be a benefit to Shapiro and Vickery does not change the fact that there was sufficient consideration for it.

We must next determine whether there was a failure of consideration.

Shapiro and Vickery argue, on the basis of our holding in *Cotner College v. Estate of Hester*, 155

Neb. 279, 51 N.W.2d 612 (1952), that the failure of the partnership to pay royalties to Shapiro and Vickery was a failure of consideration sufficient to excuse their performance under the contribution agreement. We believe not. As we indicated, the consideration for the contribution agreement was the amending of the partnership and not the payment of the royalties, though, to be sure, the payment of the royalties was one of the benefits to be derived as a result of amending the partnership. It was not, however, the only benefit to be derived. We believe that a close examination of *Cotner College* discloses that it has no application in the present case. In the *Cotner College* case a bequest payable on death was given to the college on the condition that the proceeds be used as a scholarship for students attending the college located at a specific site, teaching specific courses. In fact, the college ceased operating some 16 years before the last donor's death; and while it appears that some institution was operating in another site, it is clear that it was not the institution to which the donation had been pledged, nor was the new institution providing the same type of education as the old one to which the pledge was made. *Cotner College* held that where the purpose of the agreement totally failed, the donor was relieved of any further obligation. In the instant case, while the royalties may not in fact have been paid, the partnership was still in existence. If, indeed, Shapiro and Vickery had some rights to royalties which had been acquired by the partnership but not properly paid to Shapiro and Vickery, their recourse was to seek an accounting, to sue for the royalties, or bring some other appropriate legal action. But, contrary to the argument made by Shapiro and Vickery, they did not have a right to declare the contract at an end, thereby relieving them of their obligations under the contract.

The motive to contract and the consideration for the contract are distinct and different. 1 S. Wil-

liston, A Treatise on the Law of Contracts § 111 (3d ed. 1957). "An expectation of results often leads to the formation of a contract, but neither the expectation nor the result is 'the cause or meritorious occasion requiring a mutual recompense in fact or in law.' " *Philpot v. Gruninger*, 81 U.S. 570, 577 (14 Wall.), 20 L. Ed. 743 (1871). Parties are led into agreement by many inducements, such as the hope of profit, the expectation of acquiring what they could not otherwise obtain. These inducements are not legal or equitable considerations, and compose no part of a contract. See 17 Am. Jur. 2d *Contracts* § 93 (1964). The sharing of the royalties may have been the motive for entering into the partnership agreement, but the consideration was the acceptance by the existing partners of the new partners.

Vickery and Shapiro knew of the business losses before the documents were signed. Exhibit 9, which contains the minutes of the May 29 and June 21 meetings, shows that, while there was continued interest in a plan to acquire properties in Ohio, there were discussions of the need to borrow more money and the need to acquire further personal guaranties. According to one of the appellees, Raymond, it was during those discussions that Shapiro refused to sign guaranties without being made an equal partner. The trial court was in all respects correct when it concluded that the failure to pay royalties did not constitute a failure of consideration for the contribution agreement.

Vickery raises one other issue. Following the entry of a judgment and during the term, the trial court on motion of the appellees modified the judgment to increase the amount slightly. Vickery argues that because neither a petition was filed nor a summons served upon him pursuant to the provisions of Neb. Rev. Stat. § 25-2002 (Reissue 1979), the action of the trial court in modifying the judgment was improper. We can dispose of this assignment quickly. Section 25-2002 has no application to the

instant case. The provisions of § 25-2002 apply only to a modification of a judgment entered at a *subsequent* term. The law is clear that during the term the trial court has the inherent power to modify its judgment, and no petition or summons is required. Our law is clear that, absent an abuse of discretion, a court has the inherent power to vacate or modify its own judgment at any time during the term at which those judgments are pronounced, and such power exists entirely independent of any statute. See, *Moackler v. Finley*, 207 Neb. 353, 299 N.W.2d 166 (1980); *A. Hirsh, Inc. v. National Hair Co.*, 210 Neb. 397, 315 N.W.2d 236 (1982); *In re Estate of Weinberger*, 207 Neb. 711, 300 N.W.2d 818 (1981); *DeVries v. Rix*, 203 Neb. 392, 279 N.W.2d 89 (1979); *Harman v. Swanson*, 169 Neb. 452, 100 N.W.2d 33 (1959). The assignment is without merit.

In view of our disposition of this case, we need not consider any other assignments raised by the parties. The judgment is affirmed.

AFFIRMED.