PAUL J. WIETZKI ET AL., APPELLEES, V. DANIEL J. WIETZKI ET AL., APPELLEES, ERICSON STATE BANK, APPELLANT.

437 N.W.2d 449

Filed March 24, 1989.    No. 87-197.

Gregory G. Jensen for appellant.

James H. Buhrmann, of Buhrmann, Johnson & Wilson, and, on brief, Carole H. Larson for appellees Paul J. and Mildred Wietzki.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and CARLSON, D.J.

CARLSON, D.J.

This is a suit for strict foreclosure of a real estate contract brought by Paul J. Wietzki and Mildred Wietzki, husband and wife, hereinafter referred to as "plaintiffs," against the contract purchaser, Daniel J. Wietzki, and the Ericson State Bank, assignee of an assignment of equity in real estate in said contract, hereinafter referred to as "Bank."

The Bank cross-petitioned, claiming that on March 10, 1985, plaintiffs took a quitclaim deed from the contract purchasers in full and complete settlement and discharge of the agreement for sale of real estate alleged in plaintiffs' petition. The Bank in its cross-petition also claimed that the plaintiffs took such property by reconveyance from the contract purchaser subject to all liens and encumbrances existing therein, specifically, the lien of the Bank. The plaintiffs denied the Bank's cross-petition, and the matter proceeded to trial.

The trial court determined that plaintiffs were not entitled to strict foreclosure of the contract and that the plaintiffs had a first lien on the property and the Bank a second lien in a specified amount. The court further ordered the real estate sold

if the indebtedness of the parties was not paid within 20 days from the entry of the order. A motion for new trial was overruled, and an appeal was taken by the Bank.

The Bank's numerous assignments of error may be summarized into one: that the district court erred in finding that the plaintiffs had a first lien and the Bank a second lien on the property. To resolve this issue we first must look to the relevant facts.

On May 28, 1975, Paul Wietzki, plaintiff, sold a section of land in Greeley County, Nebraska, to his grandson, Dan Wietzki. The agreement for sale of real estate provided for installment payments and a deed to be held in escrow. The sale price was $64,000, with a $3,000 downpayment and $3,000 a year for 10 years, and a $31,000 payment on August 1, 1986. The grandson was in arrears on his payments almost immediately and, arguably because of deficient payments and interest, had little, if any, equity in the land during this whole scenario. This is shown by the uncontroverted evidence of the grandson's payment record, which was received into evidence.

Two separate assignments of equity in the agreement for sale of real estate contract dated May 28, 1975, were made by Dan Wietzki to the Bank, on March 25, 1983, and February 26, 1984. Each secured loans to Dan which, with interest, amounted to over $50,000. These assignments were recorded by the Bank. Dan also failed to meet this contract obligation. During this period, the land substantially decreased in value.

On March 10, 1985, Dan Wietzki conveyed the subject real estate to Paul Wietzki by quitclaim deed. The deed itself disclosed as consideration "One Dollar ($1.00) and o. v. c.," and the real estate transfer statement filed with the deed had the typed words, in regard to the value of stamp affixed, "deed to release debt." Unsuccessful negotiations for sale of the real estate were had, and this suit was filed December 19, 1985.

The Bank advances a merger theory in claiming priority of its liens over that of plaintiffs. In simple terms, it alleges that the quitclaim deed merged Paul Wietzki's title and lien and thereby extinguished the plaintiffs' lien and priority. The plaintiffs counter by arguing that a merger did not occur and that the plaintiffs' security was kept alive as against the intervening

interests of the Bank. What the parties do agree on is that the controlling factor determinative of this question is intention.

It has been stated that the question of merger of the interests of a mortgagee as mortgagee and his interests as transferee of the mortgage is primarily a question of intention, and a merger will generally be held to take place where there is an intention to merge the two estates, and not to take place where there is an intention to keep the mortgage alive. This result has been regarded as prevailing whether such intention is expressed or implied. Stated another way, an essential prerequisite of a merger is that the party having both legal and equitable interests have the intention that the interests should merge. See, 55 Am. Jur. 2d *Mortgages* § 1258 (1971); *Lampert Yards v. Thompson-Wetterling Const. & Realty*, 302 Minn. 83, 223 N.W.2d 418 (1974); *Gourley v. Wollam*, 348 So. 2d 1218 (Fla. App. 1977).

Nebraska agrees. In *Overland-Wolf, Inc. v. Koory*, 183 Neb. 611, 614, 162 N.W.2d 889, 890-91 (1968), it was stated as follows:

> Ordinarily, when a mortgagee becomes the owner of the fee, the former estate is merged in the latter. But the mortgagee may keep his mortgage alive when it is essential to his security against an intervening title. If there was no expression of his intention in relation to the matter at the time he acquired the equity of redemption, it will be presumed, in the absence of circumstances indicating a contrary purpose, *that he intended to do that which would prove most advantageous to himself.* [Citations omitted.]
>
> It is the intention of the mortgagee that is controlling.

(Emphasis supplied.) See, *Dupuy v. Western State Bank*, 221 Neb. 230, 375 N.W.2d 909 (1985); *Edney v. Jensen*, 116 Neb. 242, 216 N.W. 812 (1927).

What was Paul Wietzki's intent in regard to merger? It is patent from the evidence that he had no specific intent relative to "merger." What is true is that he wanted to do "that which would prove most advantageous to himself." *Overland-Wolf, supra* at 614, 162 N.W.2d at 891. In that regard, upon advice of counsel, he had the quitclaim deed executed. This attorney also prepared the real estate transfer statement indicating "deed to

release debt" and sent a letter to the Bank acknowledging its interest. These actions, plus the testimony of Dan Wietzki that Paul would "take care of the Bank"; that Paul had knowledge of the Bank's interests; and, finally, that he treated the land as his own are all proffered by the Bank as conclusive of the intent to merge. We do not agree. What this evidence does show is a person acting, on advice of counsel, with the intent to salvage his lien. An assignee (Bank) acquires only the rights of the assignor (Dan Wietzki). *State Securities Co. v. Daringer*, 206 Neb. 427, 293 N.W.2d 102 (1980). On this basis the Bank could be in no better position vis-a-vis the plaintiffs than Dan.

As to knowledge of the Bank's interest by Paul, another fact claimed as determinative of the case by the Bank, this is a two-way street. Knowledge by the Bank is also relevant, as is evidenced by the following exchanges:

Q. And you had seen that contract prior to taking the assignment as collateral?

A. Yes. [In fact, a copy of the "Agreement for Sale of Real Estate" dated May 28, 1975, was attached to the Bank's first filed "Assignment of Equity in Real Estate" dated March 25, 1983.]

. . . .

Q. Do you know if he [Paul Wietzki] ever came into your bank to discuss this matter with anybody else?

A. Not that I am aware of.

Q. Do you know of your own knowledge whether he was aware of how much Dan's debt was?

A. He would have had constructive notice from the County Clerk's office as to the amount of our liens.

Q. I don't believe that was the question I asked. From your own knowledge do you know whether he knew the amount of debt that Dan --- from Dan to the Bank?

A. As far as saying, Paul, Dan owes the Bank (x) amount of dollars, no.

Q. Did you ever talk to Paul Wietzki when you took your first or second assignment in equity?

A. No.

Q. On the property?

A. No.

Q. Did you find out whether there was any equity in the contract at that time?

A. Assuming there were no legal proceedings against Dan and looking at the payment schedule and the real estate values at the time the assignments were taken, there was considerable equity.

Q. In the contract, nothing in the land, in the contract?

A. I guess we were looking at the equity in the real estate.

Q. Did you realize that Dan was in arrears on his contract with Paul?

A. No, we did not.

Q. Did you ask Dan if he was in arrears in the contract with Paul?

A. I assume that came up in our discussion.

Q. And yet you still did not know he was in arrears?

A. No, we did not.

Q. Are you saying that Dan told you he was current?

A. I believe we took the assignment in 1981. Without looking up the document --- According to Dan's testimony, he was current the first seven payments.

Q. I believe it was '83.

A. Or '83.

Q. Yet you didn't check that out?

A. No.

These loans were made by the Bank without any knowledge of the status of the first lien, i.e., the collateral. See, *Department of Banking v. Colburn*, 188 Neb. 500, 198 N.W.2d 69 (1972); Annot., 25 A.L.R.3d 941 (1969).

Paul Wietzki testified that he never had a conversation with the Bank about giving it money for its interest in the land and that he never told Dan or the Bank that he would pay off the Bank. There is a conflict in the evidence on this point, and on others. Actions in equity, on appeal to the Supreme Court, are triable de novo on the record, subject, however, to the rule that when credible evidence on material questions of fact is in irreconcilable conflict, the Supreme Court may, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must

have accepted one version of the facts rather than the opposite. *III Lounge, Inc. v. Gaines*, 227 Neb. 585, 419 N.W.2d 143 (1988). The trial court found no merger of title and lien, and we agree. The Bank also claims error based on sympathy of the trial court. This has no merit. See, *Bohaty v. Briard*, 219 Neb. 42, 361 N.W.2d 502 (1985); *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987).

We therefore affirm the trial court's determination of priority in the plaintiffs, and also affirm all other aspects of said decree.

AFFIRMED.