BERNITA KISSINGER, APPELLEE, V.
THE GENETIC EVALUATION CENTER, INC.,
A NEBRASKA CORPORATION, APPELLANT.

618 N.W. 2d 429

Filed September 29, 2000. No. S-99-519.

Lyle Joseph Koenig, of Koenig & Stover, for appellant.

Andrew M. Loudon, of Seiler, Parker & Moncrief, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

Bernita Kissinger, the appellee, filed a petition to compel Genetic Evaluation Center, Inc. (GEC), the appellant, to repay the remainder of a $40,000 note she had previously provided to GEC. The note was cosigned by GEC and Bernita's husband, Ralph Kissinger, Jr., who simultaneously gave Bernita a security interest in a house for the note. Ralph subsequently deeded the property securing the note to Bernita, citing reasons other than satisfaction of the note for doing so. GEC continued to pay

Bernita on the note. GEC filed a counterclaim in this action on an assumpsit theory to recover the amount it had paid to Bernita on the note. Following an adverse judgment on the counterclaim, GEC appealed. We conclude that the transfer by Ralph does not extinguish the debt by merging the mortgage and the fee title of the property. Therefore, we affirm the judgment of the district court that Bernita is not required to repay the money she received from GEC.

## FACTUAL BACKGROUND

Ralph and his first wife lived in a house in Fairfield, Nebraska (Fairfield House). Ralph's first wife died in 1977, and he married Bernita in February 1979. Prior to their marriage, Ralph and Bernita signed a premarital agreement under which they relinquished each other's property and Ralph gave Bernita a life estate in the Fairfield House. Throughout their marriage, Ralph and Bernita have lived in Hastings, Nebraska.

In 1986, Ralph approached Bernita and told her that a son from his first marriage, William F. Kissinger (Bill), needed money for GEC, a corporation whose sole shareholders were Ralph and Bill. Ralph asked Bernita to loan $40,000 to GEC, and she agreed. It should be noted that one of the reasons GEC was formed was to give the Kissinger family another entity with which to borrow money. On December 26, 1986, Bill, as president of GEC, and Ralph, in his personal capacity, signed a promissory note for $40,000 in favor of Bernita. On the same day the note was signed, in exchange for the loan, Ralph executed a deed of trust which gave Bernita a security interest in his Fairfield House. GEC has never had an ownership interest in the Fairfield House, nor did it participate in granting Bernita a security interest in the house.

On the same day Bernita's funds were transferred to GEC, Ralph, as treasurer of GEC, orchestrated the transfer of Bernita's loan proceeds and other funds to Kissinger Feedlots, Inc., a business owned by Ralph, Bill, and another son of Ralph's. Thus, GEC had Bernita's funds in its possession for less than 1 day.

Three days later, Bernita's loan was transferred from Kissinger Feedlots to Kissinger Farms, Inc., a business solely

owned by Ralph. Thereafter, Ralph obtained a cashier's check and used the funds to satisfy an obligation to the Federal Deposit Insurance Corporation.

Bill testified that Kissinger Feedlots has likely paid the money back to GEC. GEC did not list Kissinger Feedlots as a debtor when GEC subsequently filed for bankruptcy.

On March 7, 1987, shortly after Bernita was given a security interest in the Fairfield House, Ralph executed a warranty deed transferring the Fairfield House to Bernita.

The reason for transferring the house to Bernita is not clear. There is no evidence, however, indicating that the transfer was in satisfaction of Bernita's loan. Bill testified that he thought Ralph had transferred the property in order to protect it from his creditors. Ralph stated that he did not intend the transfer to be in satisfaction of the promissory note. Bernita testified that Ralph came home one day and told her that he was going to deed her the house. When Bernita asked Ralph whether the deed had anything to do with the security for her loan, Ralph responded, "No, it has nothing to do with that. I just want you to have it." Bernita continues to own the house. In 1986, the property was assessed at $71,745 for tax purposes.

Bernita has been partially repaid on the note by GEC. Bill did not discover that the Fairfield House had been transferred to Bernita until 1991 or 1992. Despite knowing that the house was in Bernita's name, GEC continued to make payments on the note. All of the payments on the loan were made between 1989 and 1992 by Ralph in his capacity as treasurer of GEC, totaling $31,252 in principal and interest.

Bernita filed this action against GEC and Bill seeking repayment of the balance of the note from GEC. GEC asserted the defense of failure of consideration. GEC also filed a counterclaim, on an assumpsit theory, requesting a full refund of the amount it had paid to Bernita on the note. GEC asserted that Bernita had received title to the house securing the note prior to any payments by GEC being made on the note and that Bernita should not be allowed to keep the money.

The district court determined that it would be unfair to invoke the doctrine of merger in this case to cancel GEC's debt and require Bernita to repay the money GEC had paid to her. The

court reasoned that GEC never owned the real estate and presumably received some benefit from the loan as it kept paying principal and interest.

The district court also found that it would be unfair to enter a judgment for Bernita for the unpaid principal and interest because Bernita did have a home conveyed to her. The court then entered judgment dismissing each party's claim and ordered each to pay one-half of the court costs. GEC appealed from that part of the district court's judgment dismissing its counterclaim. Bernita did not appeal the district court's dismissal of her petition.

## ASSIGNMENT OF ERROR

GEC assigns as error the district court's ruling that Bernita is not required to repay with interest the money she received from GEC.

## STANDARD OF REVIEW

Although founded on equitable principles, an action for assumpsit falls under the common-law class of assumpsit and is an action at law. *Fackler v. Genetzky*, 257 Neb. 130, 595 N.W.2d 884 (1999); *Daubman v. CBS Real Estate Co.*, 254 Neb. 904, 580 N.W.2d 552 (1998). The judgment and factual findings of the trial court in an action at law tried to the court without a jury have the effect of a verdict and will not be set aside unless clearly wrong. *Daubman v. CBS Real Estate Co., supra.* In reviewing an action at law, an appellate court reviews the evidence in the light most favorable to the prevailing party. *Id.* However, regarding questions of law, an appellate court is obligated to reach a conclusion independent of determinations reached by the lower courts. *Id.*

## ANALYSIS

### ASSUMPSIT

An action in assumpsit for money had and received may be brought where a party has received money which in equity and good conscience should be repaid to another. *Fackler v. Genetzky, supra*; *Daubman v. CBS Real Estate Co., supra.* In such a circumstance, the law implies a promise on the part of the person who received the money to reimburse the payor in order

to prevent unjust enrichment. *Id.* Although founded on equitable principles, the action falls under the common-law class of assumpsit and is an action at law. *Id.*

In order to maintain an action in assumpsit for money had and received, the plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff. *Fackler v. Genetzky, supra.*

Importantly, there must be some specific legal principle or situation which equity has established or recognized to bring a case within the scope of assumpsit for money had and received. See, *Wrede v. Exchange Bank of Gibbon,* 247 Neb. 907, 531 N.W.2d 523 (1995), citing *Beauregard v. Orleans Trust Co.,* 108 Vt. 42, 182 A. 182 (1936) (no recovery of money received can be based upon unjust enrichment when recipient can show legal or equitable ground for keeping it); *Renn v. Wendt,* 185 Minn. 461, 241 N.W. 581 (1932) (where rights of parties to money or property are governed by valid contract, action for money had and received does not lie). Stated otherwise, one who is free from fault cannot be held to be unjustly enriched merely because one has chosen to exercise a legal or contractual right. *Wrede v. Exchange Bank of Gibbon, supra.*

GEC has shown that Bernita received money and that she retained the money. In order to recover on an action in assumpsit for money had and received, GEC must also show that Bernita should, in equity and good conscience, refund the money. In order to prevail under the legal principles stated in *Wrede v. Exchange Bank of Gibbon, supra,* GEC must show a specifically recognized legal or equitable principle that would have allowed it to avoid past payments on the promissory note to Bernita. To that end, GEC advances the equitable theory of merger and claims lack of consideration.

## MERGER

It is generally accepted that if an instrument executed by the parties is intended by them as security for a debt, whatever may be its form or name, it is in equity a mortgage. *Mackiewicz v. J.J. & Associates,* 245 Neb. 568, 514 N.W.2d 613 (1994); *Koehn v. Koehn,* 164 Neb. 169, 81 N.W.2d 900 (1957). In the

instant case, the instrument securing the Fairfield House for the promissory note was a deed of trust. Because the deed of trust was intended by the parties in this case as security for the note, we regard it as a mortgage.

 Ordinarily, when a mortgagee becomes the owner of the fee, the former estate is merged in the latter. However, the question of merger of the interests of a mortgagee as mortgagee and his or her interests as transferee of the mortgage is primarily a question of intention, and a merger will generally be held to take place where there is an intention to merge the two estates, and not to take place where there is an intention to keep the mortgage alive. *Wietzki v. Wietzki*, 231 Neb. 551, 437 N.W.2d 449 (1989). This result has been regarded as prevailing whether such intention is expressed or implied. *Id.* It is the intention of the mortgagee that is controlling. *Id.* These propositions are sensible in light of the general notion that the debt secured by a mortgage is regarded as the primary obligation between the parties and the mortgage is incidental to such indebtedness. See, *Columbus Land, Loan & Bldg. Assn. v. Wolken*, 146 Neb. 684, 21 N.W.2d 418 (1946); *Shriver v. Sims*, 127 Neb. 374, 381, 255 N.W. 60, 63 (1934) ("[t]he debt is the principal thing; the land the incident"); 54A Am. Jur. 2d *Mortgages* § 60 (1996).

 We have also stated that if there was no expression of intention in relation to the matter at the time the mortgagee acquired the equity of redemption, it will be presumed, in the absence of circumstances indicating a contrary purpose, that the mortgagee intended to do that which would prove most advantageous to himself or herself. *Wietzki v. Wietzki, supra*; *Overland-Wolf, Inc. v. Koory*, 183 Neb. 611, 162 N.W.2d 889 (1968).

 We pause to note that because a merger action is equitable in nature, the standard of review on appeal would normally be de novo on the record for factual questions, reaching a conclusion independent of the findings of the trial court. See, *Allied Mut. Ins. Co. v. Midplains Waste Mgmt.*, 259 Neb. 808, 612 N.W.2d 488 (2000); *Cao v. Nguyen*, 258 Neb. 1027, 607 N.W.2d 528 (2000). However, because assumpsit is an action at law and because we are considering an equitable merger doctrine only through the overlay of GEC's assumpsit theory, we utilize the

legal standard of review applicable to assumpsit. Therefore, we must view the facts in a light most favorable to the prevailing party, which in this case is Bernita, and set aside the judgment and factual findings of the district court only if they are clearly wrong.

We must first determine what Bernita's express or implied intention was with respect to merger at the time of the transfer. If we cannot discern her intent, we will presume, in the absence of circumstances indicating a contrary purpose, that she intended to do that which would prove most advantageous to herself. *Wietzki v. Wietzki, supra.*

The district court specifically found that there was no evidence that Bernita or Ralph intended the conveyance of the Fairfield House to act as a forgiveness of the debt, and our review of the record leads us to the same conclusion. Bernita did not testify as to her express intent in receiving title to the home. However, Bernita's intent was certainly implied through her questioning Ralph, the mortgagor.

When Ralph unilaterally decided to transfer the home to Bernita, the mortgagee, with no request or demand by her, Bernita asked Ralph if he was giving her the property in satisfaction of the note. Ralph answered that he was not giving her the property in satisfaction of the note. Viewing this evidence in a light most favorable to Bernita, it is apparent that her questioning of Ralph and her satisfaction with his answer that the transfer had nothing to do with the note show her intent at the time of the transfer was to keep the mortgage alive. Therefore, because Bernita did not intend to merge the mortgage and the Fairfield House, the mortgage remained in existence. Having determined that GEC's merger theory is without merit, we next consider whether there was a failure of consideration.

## FAILURE OF CONSIDERATION

GEC's assertion that there was a failure of consideration in the promissory note to Bernita, if valid, would also be a specifically recognized legal or equitable principle that would allow GEC to avoid past payments on the note to Bernita. In this case, however, there clearly was consideration in the formation of the promissory note.

■ Generally, there is sufficient consideration for a promise if there is any benefit to the promisor or any detriment to the promisee. *Production Credit Assn. v. Eldin Haussermann Farms*, 247 Neb. 538, 529 N.W.2d 26 (1995). What that benefit and detriment must be or how valuable it must be varies from case to case. It is clear, however, that even "a peppercorn" may be sufficient. *Hyde v. Shapiro*, 216 Neb. 785, 346 N.W.2d 241 (1984).

A benefit need not necessarily accrue to the promisor if a detriment to the promisee is present, and there is a consideration if the promisee does anything legal which he is not bound to do or refrains from doing anything which he has a right to do, whether or not there is any actual loss or detriment to him or actual benefit to the promisor. *Id.*, citing *Phelps v. Blome*, 150 Neb. 547, 35 N.W.2d 93 (1948).

GEC's assertion that there was no consideration in the instant case is based on the premise that it did not receive a benefit from the transaction with Bernita. However, the question of consideration has never been dependent upon whether the promisor considered the benefit received sufficient, but only whether, as a matter of law, the promisee suffered a detriment or did anything which he was not otherwise required to do, no matter how significant in fact was the detriment or promise. *Hyde v. Shapiro, supra*. Bernita, as promisee, obviously suffered a detriment in this case by loaning $40,000 to GEC.

■ Indeed, Kissinger Feedlots or Kissinger Farms, as opposed to GEC, might have reaped the benefit of the loan. Nevertheless, the benefit need not be to the party contracting, but may be to anyone else at the contracting party's procurement or request. *Production Credit Assn. v. Eldin Haussermann Farms, supra.*

While the district court found it unclear as to whether GEC received a direct benefit from the loan, that does not impact our determination whether there was consideration. In this case, Ralph, acting in his capacity as treasurer of GEC, transferred the loan proceeds to Kissinger Feedlots as a loan or as purchase money for machinery. The motives of the officers of GEC (Bill and Ralph) in transferring the $40,000 loan proceeds to other Kissinger entities is not entirely clear from the record. What is clear from the evidence, however, is that there was certainly a

benefit to the promisor, GEC, and a $40,000 detriment to the promisee, Bernita, in this loan transaction. There is no merit to GEC's assertion that the loan from Bernita to GEC lacked consideration.

## CONCLUSION

Because GEC's merger and failure of consideration theories have failed, there is no specifically recognized legal or equitable principle that would allow GEC to avoid past payments on the promissory note to Bernita. Therefore, GEC's counterclaim based in assumpsit for money had and received fails. The district court did not err in denying GEC recovery of the money it had paid Bernita on the note after the property securing the note was transferred to her. The judgment of the district court is therefore affirmed.

AFFIRMED.