TODD A. KANNE AND JEANETTE W. SHERMAN, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED IN THE STATE OF NEBRASKA, APPELLANTS, V. VISA U.S.A. INC. AND MASTERCARD INTERNATIONAL, INC., APPELLEES.

723 N.W.2d 293

Filed November 3, 2006. No. S-05-299.

Marvin O. Kieckhafer, of Smith Peterson Law Firm, L.L.P., and Daniel M. Cohen, of Cuneo, Gilbert & LaDuca, L.L.P., for appellants.

Fredric H. Kauffman, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., and Lyman L. Larsen, and, on brief, Michael J. Leahy, of Stinson, Morrison & Hecker, L.L.P., for appellees.

Stephen V. Bomse, of Heller, Ehrman, White & McAuliffe, L.L.P., for appellee Visa U.S.A. Inc.

CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

In their class action claims, appellants, Todd A. Kanne and Jeanette W. Sherman, allege that appellees, Visa U.S.A. Inc. (Visa) and MasterCard International, Inc. (MasterCard), violated provisions of Nebraska's unlawful restraint of trade statutes (referred to as the "Junkin Act"), Neb. Rev. Stat. §§ 59-801 to 59-831 (Reissue 2004) and Neb. Rev. Stat. §§ 59-1603 to 59-1609 (Reissue 2004) of the Consumer Protection Act. In addition, appellants allege a claim for unjust enrichment for money had and received.

Appellants claim that Visa and MasterCard each tied the sale of credit and debit network processing services to their member banks and that this tying resulted in Visa's and MasterCard's member banks charging merchants excessive fees for processing debit transactions. Appellants further claim that because of

the excessive fees, the merchants passed those costs on to consumers in artificially inflated prices.

Visa and MasterCard moved to dismiss for lack of standing. See Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(6) (rev. 2003). The district court dismissed appellants' claims, finding that appellants lacked standing under either the Junkin Act or the Consumer Protection Act and that they failed to allege an unjust enrichment claim. We granted bypass.

We hold that appellants lack standing for their antitrust claims because their alleged injuries are derivative and remote. Appellants' claims for unjust enrichment fail because Visa and MasterCard were not unjustly enriched. We affirm.

## BACKGROUND

### APPELLANTS' ALLEGATIONS

Appellants allege the following facts: Visa and MasterCard are membership corporations whose member banks issue debit and credit cards to consumers. Credit cards provide the consumer with the option to buy now and pay later, whereas debit cards deduct the purchase amount directly from the cardholder's bank account.

To accept these cards, a merchant must enter into a contract with one of the member banks. Under these contracts, merchants agree to pay a merchant discount fee, which typically ranges from 1.4 to 4.5 percent of the transaction amount. In exchange, merchants get processing services and a guarantee from the member bank that the merchants will be paid when a customer uses a Visa or MasterCard.

According to appellants, Visa and MasterCard used their market power to force merchants to purchase their debit card processing services by tying credit card services to debit card services. Under this tying arrangement, Visa and MasterCard forced merchants to accept their debit cards as a condition of accepting their credit cards. Visa and MasterCard charged the same fees for both types of cards even though the risks associated with credit cards are greater than for debit cards. Merchants normally would not pay these higher rates, but to be competitive, they need the credit card services. This arrangement restrained the market for the provision of debit card processing services by

foreclosing competition and preventing the development of more efficient and less expensive services. The tying arrangement caused merchants to pay "supra-competitive, artificially inflated costs" for their debit card processing services, and as a result, the merchants passed these costs to consumers through inflated prices for goods.

In conclusion, appellants allege the tying arrangement was an attempted monopolization that violated the provisions of the Junkin Act and the Consumer Protection Act. They also allege common-law claims for unjust enrichment.

## DISTRICT COURT'S DECISION

The district court granted Visa and MasterCard's motion to dismiss appellants' petition for lack of standing. The court first addressed appellants' claims under the Junkin Act and found that because the remedial provisions in § 59-821 were similar to federal antitrust law, federal antitrust precedent was persuasive. The court then applied the standing factors set forth in *Associated General Contractors v. Carpenters*, 459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983), and concluded that appellants lacked standing. The court also held that appellants are not indirect purchasers entitled to bring suit because they did not purchase Visa's or MasterCard's debit card services, either directly or indirectly.

The court also dismissed appellants' claim under the Consumer Protection Act after noting the remedial language of § 59-1609 is virtually identical to that of the Junkin Act and, therefore, the same *Associated General Contractors* standing analysis applies. Finally, the court dismissed appellants' common-law claims for unjust enrichment because appellants did not state a cause of action under either the Junkin Act or the Consumer Protection Act. The court also found that Visa and MasterCard did not retain any potential enrichment because they had settled with the merchants for the contested debit processing services.

## ASSIGNMENT OF ERROR

Appellants assign that the trial court erred in granting Visa and MasterCard's motion to dismiss.

## STANDARD OF REVIEW

■ Appeals of a district court's grant of a motion to dismiss for failure to state a claim require this court to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. See, *Kellogg v. Nebraska Dept. of Corr. Servs.*, 269 Neb. 40, 690 N.W.2d 574 (2005); *Butler Cty. Sch. Dist. No. 502 v. Meysenburg*, 268 Neb. 347, 683 N.W.2d 367 (2004).

## ANALYSIS

Appellants claim that Visa and MasterCard engaged in tying that violated the Junkin Act. The Junkin Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce . . . is hereby declared to be illegal." § 59-801. It prohibits an "attempt to monopolize . . . any part of the trade or commerce, within this state." § 59-802. The Junkin Act further provides a potential damages remedy to a "person who is injured in his or her business or property" by a violation of the act, whether the injured person "dealt directly or indirectly with the defendant." § 59-821.

■ Like the Junkin Act, § 4 of the federal Clayton Act, codified at 15 U.S.C. § 12 et seq. (2000), also provides a potential damages remedy to a person "injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a). The Junkin Act mandates that when its provisions are "similar to the language of a federal antitrust law, the courts of this state in construing such [provisions] shall follow the construction given to the federal law by the federal courts." § 59-829. Because the remedial provisions of the Junkin Act and Clayton Act are so similar, § 59-829 requires that we follow the federal courts' construction of the Clayton Act.

■ Despite the broad remedial language of the Clayton Act, not every person claiming an injury from an antitrust violation can recover damages under § 4. Although a "literal reading of the [federal] statute is broad enough to encompass every harm that can be attributed *directly or indirectly* to the consequences of an antitrust violation," the "federal courts have been 'virtually unanimous in concluding that Congress did not intend the antitrust

laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation.' " (Emphasis supplied.) *Associated General Contractors v. Carpenters*, 459 U.S. 519, 529, 534, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983), quoting *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 92 S. Ct. 885, 31 L. Ed. 2d 184 (1972).

Here, appellants do not allege that their injuries stem from their purchases of the purportedly tied debit network processing services that Visa and MasterCard provided to the merchants. Instead, appellants claim only derivative and remote injuries through their purchases from the merchants of a variety of retail goods that Visa and MasterCard neither manufactured nor sold.

In discussing remote injuries, the U.S. Supreme Court, in *Associated General Contractors*, identified five factors for determining whether a plaintiff asserts an injury too remote from an alleged antitrust violation to confer standing to recover damages: (1) whether the plaintiff is a consumer or competitor in the allegedly restrained market; (2) whether the injury alleged is a direct, firsthand impact of the restraint alleged; (3) whether there are more directly injured appellants with motivation to sue; (4) whether the damages claims are speculative; and (5) whether the plaintiff's claims risk duplicative recoveries and would require a complex apportionment of damages. Applying the above factors, the U.S. Supreme Court held that the claims of a labor union, which alleged that defendants had coerced third parties to enter into relationships with nonunion firms, should be dismissed. *Id.*

The Eighth Circuit Court of Appeals and other federal courts have routinely applied the standing factors identified in *Associated General Contractors* to dismiss claims based on derivative or remote injuries under federal antitrust law. See, e.g., *Henke Enterprises, Inc. v. Hy-Vee Food Stores*, 749 F.2d 488, 489-90 (8th Cir. 1984) (affirming dismissal of plaintiff's claim because it "was neither a competitor, participant, nor consumer within the [allegedly restrained] retail grocery market"; there were "more directly affected parties" who could redress any antitrust violation; and the plaintiff's damages were "speculative" because " 'diminished consumer activity at any given shopping area could result from myriad independent reasons unrelated to [the] alleged antitrust violation' "). See, also, *Pocahontas*

*Supreme Coal Co. v. Bethlehem Steel*, 828 F.2d 211 (4th Cir. 1987); *Peck v. General Motors Corp.*, 894 F.2d 844 (6th Cir. 1990); *Alpha Shoe Service v. Fleming Companies, Inc.*, 849 F.2d 352 (8th Cir. 1988); *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538 (9th Cir. 1987); *Sharp v. United Airlines, Inc.*, 967 F.2d 404 (10th Cir. 1992). Although the above federal decisions applying *Associated General Contractors'* standing factors postdate our decision in *Barish v. Chrysler Corporation*, 141 Neb. 157, 3 N.W.2d 91 (1942), they are consistent with *Barish*. In *Barish*, we held a shareholder-officer of a corporation lacked standing to sue under the Junkin Act for injuries that were derivative of the corporation's injuries from the alleged antitrust violation.

APPLICATION OF ANTITRUST STANDING PRINCIPLES
UNDER *ASSOCIATED GENERAL CONTRACTORS*

The district court correctly dismissed appellants' Junkin Act claims for lack of standing for several reasons. First, appellants are not competitors in the allegedly affected market, which is the business of providing debit network processing services to merchants. Nor are appellants consumers of those services.

Second, appellants allege injuries that are derivative and remote. They allege that the "tying arrangements . . . have forced *Merchants* to accept [Visa and MasterCard brand debit cards] and pay fees which are supra-competitive." (Emphasis supplied.) Thus, they claim to have been injured only derivatively, because merchants allegedly raised the prices of all goods that they sold, thereby "pass[ing] those prices on to consumers in the for[m] of artificially-inflated and advanced prices for goods." Appellants do not allege that they were injured directly, or even indirectly, by purchasing debit processing services in a chain of distribution. Appellants, instead, assert a derivative injury based on a theory that merchants passed on the cost of an alleged tying of debit processing services to increase the prices of thousands of unrelated retail goods the merchants sold to consumers such as appellants.

Third, there are more directly injured parties. The alleged direct victims of Visa's and MasterCard's conduct—the more than 4 million merchants nationwide that accepted Visa or MasterCard—litigated for years, and it is undisputed that they settled a class action challenging the very same tying alleged

here. See *In re Visa Check/MasterMoney Antitrust Litigation*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003), *affirmed sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005), *cert. denied* 544 U.S. 1044, 125 S. Ct. 2277, 161 L. Ed. 2d 1080. Denying appellants an antitrust remedy will not leave a significant antitrust violation undetected or unremedied. See *Associated General Contractors v. Carpenters*, 459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983).

Fourth, appellants' damages claims are speculative. Appellants do not and cannot allege that they overpaid for purchases of debit processing services from merchants. Instead, appellants assert that they paid an overcharge on every retail good that they purchased from every Nebraska merchant that accepted Visa or MasterCard, over the course of several years, regardless of the form of payment used to make their purchases. Like the claimed damages in *Henke Enterprises, Inc. v. Hy-Vee Food Stores*, 749 F.2d 488, 490 (8th Cir. 1984), the claimed price increases over a period of years could have resulted "from myriad independent reasons" unrelated to the alleged violation of the Junkin Act.

Finally, appellants' claims pose a risk of a double recovery and would require a complex apportionment of damages. Visa and MasterCard settled with the nationwide merchant class for more than $3 billion, and appellants base their claims on the same alleged tying asserted in the merchants' class action. Appellants thus seek a recovery duplicative of the settlement sums that Visa and MasterCard are paying to Nebraska merchants. See, e.g., *Ho v. Visa U.S.A., Inc.*, 16 A.D.3d 256, 257, 793 N.Y.S.2d 8, 9 (2005) (defendants "have been subjected to judicial remediation . . . and any recovery here would be duplicative"). Moreover, apportioning damages would be a nightmare. Appellants' claims would require an apportionment of damages among each Nebraska merchant at which appellants shopped and among each item that each appellant purchased at each merchant—an incredibly complex task. None of the factors from *Associated General Contractors* weigh in favor of concluding that appellants' claimed injury is the type intended to be protected by antitrust laws. We conclude that appellants lack standing under *Associated General Contractors* to seek recovery for Visa and MasterCard's alleged violation of the Junkin Act.

## STATUTORY LANGUAGE OF JUNKIN ACT DOES NOT
## ELIMINATE ANTITRUST STANDING PRINCIPLES

Appellants attempt to skirt the antitrust standing requirements by arguing that the Junkin Act "grant[s] all persons standing to bring an action, if they suffered injury from a violation." Brief for appellants at 6.

In 1977, the U.S. Supreme Court held that only overcharged direct purchasers may recover under § 4 of the Clayton Act under a pass-on theory in an antitrust action. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977). In 2002, the Nebraska Legislature amended § 59-821 of the Junkin Act for the specific and limited purpose of eliminating *Illinois Brick Co.* as a bar against suits by indirect purchasers. The amendment provides that the damages remedy afforded to persons injured by a violation of the Junkin Act would be available whether such injured person dealt directly or indirectly with the defendant. § 59-821. The amendment thus removed the bar against suits by an indirect purchaser plaintiff who dealt indirectly with the defendant by purchasing the defendant's product from an intermediary, rather than directly from the defendant.

But the amendment to the remedial provision of the Junkin Act, § 59-821, does not reject all standing requirements. Section 59-821 is silent on what standing requirements courts should apply to damages claims under it. To the contrary, § 59-821 mirrors the equally broad wording of the federal antitrust remedial statute, § 4 of the Clayton Act, pursuant to which courts uniformly impose standing requirements on antitrust damages actions. See, e.g., *Associated General Contractors v. Carpenters*, 459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983); *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 92 S. Ct. 885, 31 L. Ed. 2d 184 (1972); *Loeb v. Eastman Kodak Co.*, 183 F. 704 (3d Cir. 1910).

Moreover, the U.S. Supreme Court explained in *Illinois Brick Co.* that "the question of which persons have been injured by an illegal overcharge . . . is analytically distinct from the question of which persons have sustained injuries too remote to give them standing." 432 U.S. at 728 n.7.

The 2002 amendment did not reject the application of standing requirements to damages actions under § 59-821. It

simply removed the automatic bar against indirect purchaser actions announced in *Illinois Brick Co. v. Illinois, supra.* It did not eliminate separate and distinct antitrust standing requirements that bar appellants' claims.

### *ARTHUR V. MICROSOFT CORP.* DOES NOT ELIMINATE ANTITRUST STANDING PRINCIPLES

Appellants argue that *Arthur v. Microsoft Corp.*, 267 Neb. 586, 676 N.W.2d 29 (2004), rejected the application of antitrust standing requirements under § 59-821. In *Arthur*, we addressed whether the *Illinois Brick Co.* bar against indirect purchaser suits should apply under the Consumer Protection Act; we did not address the distinct antitrust standing requirements that bar claims based on derivative or remote injuries. The plaintiffs in *Arthur* were purchasers of Microsoft Corporation's Windows 98 operating system. They claimed that Microsoft Corporation violated the Consumer Protection Act by using its monopoly power to charge supracompetitive prices for Windows 98. The plaintiffs had a direct relationship with Microsoft Corporation because they were end-user licensees of Windows 98, but they had purchased Windows 98 indirectly through a computer distributor. Microsoft Corporation argued that because the plaintiffs were indirect purchasers of Windows 98, their claims should be barred because of *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977).

We emphasized that "[t]he issue presented is whether an indirect purchaser may bring a civil action under the [Consumer Protection] Act." *Arthur v. Microsoft Corp.*, 267 Neb. at 593, 676 N.W.2d at 34. We concluded that the Consumer Protection Act contemplates an action by indirect purchasers. Although we loosely used the word standing to refer to whether *Illinois Brick Co.* barred the plaintiffs' claims, we did not discuss *Associated General Contractors* or discuss, much less reject, the antitrust standing requirements that *Illinois Brick Co.* had expressly distinguished as analytically distinct. Our decision in *Arthur* does not eliminate antitrust standing requirements.

Moreover, appellants are not indirect purchasers permitted to sue under *Arthur*. The plaintiffs in *Arthur* had a direct relationship with Microsoft Corporation because they were end-user licensees of Windows 98, but each had purchased Windows 98

indirectly through an intermediary. *Arthur v. Microsoft Corp., supra.* Here, appellants did not purchase the debit card services, either directly or indirectly; rather, they claim to have paid higher prices for goods resulting from the merchants' purchase of Visa's and MasterCard's debit card services.

### APPLICATION OF ANTITRUST STANDING PRINCIPLES IS CONSISTENT WITH *ARTHUR V. MICROSOFT CORP.*

Appellants also argue that applying the antitrust standing principles identified in *Associated General Contractors* would be inconsistent with the decision in *Arthur* to allow indirect purchaser suits. Specifically, appellants assert that "the wholesale adoption of the [Associated General Contractors] five-factor test by Nebraska courts would make meaningless the broad grant of standing to ordinary consumers . . . upheld . . . in Arthur." Brief for appellants at 17.

The antitrust standing factors articulated in *Associated General Contractors v. Carpenters*, 459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983), however, can accommodate the approval of "indirect purchaser" actions in *Arthur* and the 2002 amendment to the Junkin Act.

▮ The Seventh Circuit rejected state antitrust law claims on standing grounds, despite the state's rejection of the *Illinois Brick Co.* bar. For example, in *International Broth. of Teamsters v. Philip Morris*, 196 F.3d 818 (7th Cir. 1999), the court noted that Illinois does not follow the *Illinois Brick Co.* doctrine. The Seventh Circuit nevertheless affirmed the dismissal of Illinois' antitrust law claims for lack of antitrust standing, reasoning that the *Illinois Brick Co.* doctrine "is only one of several obstacles to [plaintiffs'] recovery on an antitrust claim. The direct-purchaser doctrine of *Illinois Brick [Co.]* and the direct-injury doctrine of *Associated General Contractors* are analytically distinct." *International Broth. of Teamsters v. Philip Morris*, 196 F.3d at 828.

### DISTRICT COURT CORRECTLY HELD THAT APPELLANTS FAIL TO STATE ANTITRUST CLAIM UNDER CONSUMER PROTECTION ACT

Appellants also purport to allege an antitrust claim under the Consumer Protection Act. Like the Junkin Act, the Consumer

Protection Act provides that "[a]ny contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce shall be unlawful," § 59-1603, and prohibits an "attempt to monopolize . . . any part of trade or commerce." § 59-1604.

Appellants do not dispute that the standing requirements for an antitrust claim under the Consumer Protection Act should be the same as for an antitrust claim under the Junkin Act. That is because, as the district court noted, the remedial provisions in § 59-821 of the Junkin Act and in § 59-1609 of the Consumer Protection Act are nearly identical. Both provisions offer a potential damages remedy to a person injured in his or her business or property by a violation, whether such injured person dealt directly or indirectly with the defendant. §§ 59-821 and 59-1609. Both provisions also are subject to § 59-829, which provides:

> When any provision of sections 59-801 to 59-831 and sections 84-211 to 84-214 *or any provisions of Chapter 59* is the same as or similar to the language of federal antitrust law, the courts of this state in construing such sections or chapter shall follow the construction given to the federal law by the federal courts.

(Emphasis supplied.)

The district court's dismissal of appellants' Consumer Protection Act claims for lack of standing also is supported by decisions dismissing claims based on derivative and remote injuries under the consumer protection statutes of other states. For example, in the parallel action against Visa and MasterCard in New York, the consumer-plaintiffs also asserted claims under New York's consumer protection from deceptive acts and practices statute, N.Y. Gen. Bus. Law § 349 (2004). See *Ho v. Visa U.S.A., Inc.*, 16 A.D.3d 256, 793 N.Y.S.2d 8 (2005). The New York appellate court unanimously affirmed the dismissal of those claims "because of the remoteness of [the plaintiffs'] damages from the alleged injurious activity." *Id.* at 257, 793 N.Y.S.2d at 8-9. The court concluded that even if the merchants had paid overcharges for debit services, it did not result in an actionable claim for any perceived injuries to the merchants' customers. Those injuries were too remote and derivative to countenance such a cause of action. *Id.*

New York's highest court reached a similar conclusion in *Blue Cross and Blue Shield v. Philip Morris*, 3 N.Y.3d 200, 818 N.E.2d 1140, 785 N.Y.S.2d 399 (2004). There, the court refused to presume an intent to include recovery for derivative injuries under New York's consumer protection statute in the absence of a clear indication of such intent from the legislature. Such derivative injuries, the court found, occur when the loss arises solely as a result of injuries sustained by another party. The court concluded that a plaintiff alleging such derivative injuries "has no standing to bring an action under [New York's consumer protection statute] because its claims are too remote." *Blue Cross and Blue Shield v. Philip Morris*, 3 N.Y.3d at 208, 818 N.E.2d at 1145, 785 N.Y.S.2d at 404. Here, because appellants allege injuries that are derivative and remote, they also fail to state a claim under Nebraska's Consumer Protection Act.

### DISTRICT COURT CORRECTLY HELD THAT APPELLANTS FAILED TO STATE CLAIM FOR UNJUST ENRICHMENT FOR MONEY HAD AND RECEIVED

■ Appellants' remaining claims seek money for unjust enrichment that Visa and MasterCard allegedly received from the purportedly inflated prices for retail goods that appellants paid. To recover on such a claim, the plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff. See *Kissinger v. Genetic Eval. Ctr.*, 260 Neb. 431, 618 N.W.2d 429 (2000). See, also, e.g., *Fackler v. Genetzky*, 257 Neb. 130, 595 N.W.2d 884 (1999).

Appellants, however, fail to state a claim for unjust enrichment because they do not and cannot allege that Visa and MasterCard unjustly obtained or retained any money from appellants. Appellants contend Visa's and MasterCard's alleged tying resulted in the extraction of an extra sales tax from appellants consisting of the inflated costs associated with merchants' having to involuntarily accept Visa Check and MasterMoney debit cards. Thus, appellants argue, Visa and MasterCard "should not be permitted to profit by engaging in anti-competitive acts in violation of Nebraska's antitrust and consumer protection laws." Brief for appellants at 18. But for reasons previously noted,

appellants cannot state an actionable antitrust tying claim against Visa or MasterCard under the Junkin Act or the Consumer Protection Act. Moreover, appellants fail to allege that Visa and MasterCard retained any money. Appellants have failed to allege an enrichment that is unjust.

A nationwide class of merchants—including Nebraska merchants that accepted Visa and MasterCard—already sued to recover any extra fees purportedly related to the alleged tying. The merchant class settled those claims for more than $3 billion, a sum that the federal court found was reasonable. *In re Visa Check/MasterMoney Antitrust Litigation*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003), *affirmed sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005), *cert. denied* 544 U.S. 1044, 125 S. Ct. 2277, 161 L. Ed. 2d 1080. As the district court concluded, Visa and MasterCard have not retained any potential enrichment because they settled their claims with 5 million merchants and agreed to pay over $3 billion into a settlement trust over a dispute involving the same allegedly inflated costs at issue in the present case. We agree and also conclude that appellants did not allege a claim for unjust enrichment or money had and received.

## CONCLUSION

Because appellants' injuries are derivative and remote, they lack standing to bring their antitrust claims. In addition, their unjust enrichment claim fails because Visa and MasterCard were not unjustly enriched. We affirm.

AFFIRMED.

HENDRY, C.J., and WRIGHT, J., not participating.