IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


HELZER V. MAMOT


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


GERALD N. HELZER, SPECIAL ADMINISTRATOR OF THE ESTATE OF MONTY M. MAMOT,
DECEASED, ET AL., APPELLANTS AND CROSS-APPELLEES,

V.

HERITAGE BANK AND JAMIE P. MAMOT, APPELLEES AND CROSS-APPELLANTS.


Filed June 9, 2015.    No. A-14-683.


Appeal from the District Court for Howard County: KARIN L. NOAKES, Judge. Affirmed in part, and in part reversed and remanded with directions.

Barry D. Geweke and Garrett L. Schroeder, of Stowell & Geweke, P.C., L.L.O., for appellants.

Larry W. Beucke, of Parker, Grossart, Bahensky, Beucke & Bowman, L.L.P., for appellees.


MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Following Monty Mamot's death, various parties disputed whether Monty's estate was entitled to certain contractual payments and whether it remained obligated to pay an outstanding bank loan. In an attempt to clarify those disputes, the special administrator of Monty's estate and three Mamot business entities jointly brought declaratory judgment actions. The special administrator also sought judgments against Monty's former wife, Jamie Mamot, for unjust enrichment. Finally, the Mamot business entities brought an interpleader action to determine the proper recipient of the final payment under a contract. The district court dismissed the declaratory judgment actions after determining other adequate remedies were available to the parties. The

- 1 -

court also concluded Jamie had not been unjustly enriched and ordered the interpleader funds returned to the Mamot business entities.

All parties appeal or cross-appeal from the court's order. The parties agree the declaratory judgment and interpleader actions should have been adjudicated and seek reversal of the district court's order of dismissal. The special administrator also contends the district court erred in its determination that Jamie was not unjustly enriched.

As discussed below, we conclude that declaratory judgment was proper in this case and reverse the court's order of dismissal. However, we affirm the court's determination that Jamie was not unjustly enriched.

FACTUAL BACKGROUND

Monty owned stock in two family businesses; Mamot Land & Cattle Co., Inc. and Mamot Trucking, Inc., and he also had an undivided one-fourth partnership interest in Mamot Feedlots (hereinafter referred to collectively as "Mamot Entities"). On August 31, 2006, Monty entered into a contract with Mamot Entities for the sale of his shares of corporate stock and his partnership interest (hereinafter "stock purchase agreement") for a purchase price of $1,700,000, payable as follows: 25-percent of the purchase price, or $425,000, due at closing and the balance with interest to be paid over 10 years starting in 2007. Each yearly payment totaled $162,659.39 and became due on February 1. Following the execution of the stock purchase agreement, Monty resigned from his roles in Mamot Entities.

As collateral for the payments due under the contract, Mamot Entities agreed to keep two $250,000 whole life insurance policies, #44599169 and #42488631, insuring Monty's life, in full force and effect during the term of the stock purchase agreement. The agreement also required Monty to maintain two $250,000 universal life insurance policies, #63687601 and #63711238, which also insured his own life, for the duration of the agreement. In the event of Monty's death during the effective period of the agreement, the benefits from these four life insurance policies were to be applied to any remaining balance due to Monty. The terms of the agreement provided that the benefits from policies #63687601 and #63711238 were to be exhausted prior to the benefits from policies #44599169 and #42488631. Any death benefits remaining from policies #63687601 and #63711238 after the balance of the stock purchase agreement had been paid were to go to Monty's heirs, successors, or assigns. The excess benefits from policies #44599169 and #42488631 were directed to the remaining directors of Mamot Entities; Daron Mamot and Kevin Mamot, in equal shares.

On December 19, 2011, Monty's wife, Jamie Mamot, filed for divorce. On February 15, 2012, while the dissolution proceedings were pending, Monty and Jamie obtained a loan from Heritage Bank in the amount of $344,057. As collateral for this loan, they pledged Monty's contractual rights under the 2006 stock purchase agreement with Mamot Entities. The consumer security agreement Monty and Jamie executed contains the following statement describing the collateral pledged as security for the loan:

> All contract rights including proceeds of sale from the contract agreement for purchase of corporate stock and partnership interest dated August 31, 2006 between Monty M. Mamot, hereinafter referred to as seller, and Mamot Land & Cattle Co., Inc., a Nebraska

corporation, Mamot Trucking, Inc., a Nebraska corporation and Mamot Feedlots, a Nebraska partnership, hereinafter collectively referred to as buyers; whether any of the foregoing is owned now or acquired later; all accessions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to the foregoing (including insurance, general intangibles and account proceeds).

The first payment on this loan became due on February 2, 2013, in the amount of $126,304.44.

On May 30, 2012, Monty and Jamie were divorced pursuant to a decree of dissolution. The court incorporated the parties' property settlement agreement into the decree. The property settlement agreement provided that Jamie would retain the family residence and required Monty to pay off the remaining indebtedness on the residence by using the annual payments he received under the 2006 stock purchase agreement. The property settlement agreement further required Monty to maintain Jamie as the primary beneficiary on life insurance policies #63687601 and #63711238.

In July 2012, Monty borrowed a total of $5,000 from Mamot Entities. To memorialize these transactions, Monty executed two documents in which he stated that he had borrowed this money against his February 2013 payment under the stock purchase agreement.

Monty died on July 23, 2012. At the time of Monty's death, Mamot Entities owed Monty $572,706.37 under the 2006 stock purchase agreement. Due to Monty's death, Jamie, as named beneficiary, received $501,273.98 in death benefits from life insurance policies #63687601 and #63711238. Records from the life insurance company demonstrate that the additional $1,273.98 Jamie received was interest for the period following Monty's death until the date of payment. Per the terms of the stock purchase agreement, Mamot Entities credited the insurance proceeds Jamie received against the outstanding balance due to Monty under the agreement.

On February 1, 2013, Mamot Entities deposited $87,112.06, an amount which Mamot Entities believed represented the outstanding balance due to Monty under the stock purchase agreement, along with applicable interest, into the Howard County District Court. Mamot Entities later sought to adjust its final payment under the stock purchase agreement to $85,808.25. This amount reflected Mamot Entities having deducted the full amount of life insurance benefits Jamie received (which included interest) whereas the initial deposit had been made under the assumption that the life insurance benefits only totaled $500,000.

Also on February 1, 2013, the special administrator of Monty's estate and Mamot Entities jointly filed suit against Jamie and Heritage Bank. In their operative complaint, the special administrator and Mamot Entities sought a declaratory judgment determining that Mamot Entities owed Monty's estate a total of $85,808.25 as the final payment under the stock purchase agreement. The special administrator also sought a declaratory judgment determining that the life insurance proceeds Jamie received were to be used to satisfy the Heritage Bank loan and for judgment against Jamie, based on the theory of unjust enrichment, in the amounts of the outstanding Heritage Bank loan and the last payment due under the stock purchase agreement. Finally, Mamot Entities, through an interpleader action, sought to have the court determine the proper recipient of the final payment due under the stock purchase agreement.

At the time of Monty's death, the entire Heritage Bank loan debt remained as no payments were due until February 2013. To avoid having interest accrue on the outstanding loan balance, Jamie made a $250,000 payment on September 21, 2012. Following Jamie's payment, the outstanding balance on the loan was $104,522.07. Jamie has filed a claim in Monty's estate to recover the $250,000 payment she had made against the loan.

At the time of trial in May 2014, a Heritage Bank official testified that $104,823.32 remained outstanding on its loan. To partially satisfy its loan, the bank sought to obtain the funds Mamot Entities deposited into the district court. However, the bank was not seeking to obtain any of the life insurance benefits Jamie had received. In addition to its involvement in the present action, Heritage Bank has also filed a claim in Monty's estate to recover the remaining balance due on its loan.

In a written order following trial, the district court dismissed the declaratory judgment actions. The court found declaratory judgments were not appropriate because the special administrator and Mamot Entities had not raised any questions as to the validity or construction of the stock purchase agreement, the property settlement agreement in the decree of dissolution, or the life insurance policies. The court further stated that declaratory judgment was inappropriate because other remedies at law were available. Specifically, the court remarked

> In addition, these prayers for relief are not appropriate in a declaratory action because Plaintiffs have other remedies at law available to them. For instance, suits can be filed against [Mamot Entities] by Monty's Estate for the remaining [. . .] payments, Mamot Entities can file suit against Monty's Estate for breach of contract, Jamie Mamot could file a claim against Monty's Estate for payments owing under the settlement agreement and Jamie Mamot and/or Monty's Estate could seek an enforcement action in the dissolution case.

The court also determined that Jamie had not been unjustly enriched by receiving the life insurance proceeds. The court found adequate legal grounds existed for Jamie to retain the insurance proceeds; namely, the property settlement agreement in the decree of dissolution provided that Monty would maintain Jamie as the beneficiary. Finally, to address Mamot Entities' interpleader action, the court ordered the funds deposited with the court to be returned to Mamot Entities.

The special administrator and Mamot Entities appeal from the court's order and Jamie and Heritage Bank both cross-appeal.

ASSIGNMENTS OF ERROR

The special administrator and Mamot Entities assign six errors which we condense into three. They argue the district court erred when it (1) determined a declaratory judgment was not an appropriate remedy in this case; (2) determined Jamie was not unjustly enriched by her receipt of the life insurance benefits; and (3) failed to enter an order on the interpleader action.

In their cross-appeal, Jamie and Heritage Bank assign three errors. Like the appellants, they also argue that the court erred in determining a declaratory judgment was inappropriate. Additionally, they assert that the court should have determined the final amount owed by Mamot

Entities under the stock purchase agreement and ordered the interpleader funds to be paid to Heritage Bank.

## STANDARD OF REVIEW

Whether to entertain an action for declaratory judgment is within the discretion of the trial court. *State ex rel. Jacob v. Bohn*, 271 Neb. 424, 711 N.W.2d 884 (2006); *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 268 Neb. 439, 684 N.W.2d 14 (2004). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Id*.

## ANALYSIS

*Dismissal of Declaratory Judgment Actions*.

The special administrator and Mamot Entities initiated declaratory judgment actions pursuant to Neb. Rev. Stat. § 25-21,150 (Reissue 2008), which provides:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Section 25-21,160 (Reissue 2008) states that the Nebraska declaratory judgment statutes are "remedial; their purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and are to be liberally construed and administered."

A declaratory judgment is by definition forward-looking, for it provides "'preemptive justice' designed to relieve a party of uncertainty before the wrong has actually been committed or the damage suffered." *Hauserman v. Stadler*, 251 Neb. 106, 111, 554 N.W.2d 798 (1996), quoting *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992). The function of a declaratory judgment is to determine justiciable controversies which either are not yet ripe for adjudication by conventional forms of remedy or, for other reasons, are not conveniently amenable to the usual remedies. *Hauserman v. Stadler*, *supra*. The Nebraska Supreme Court has stated the following regarding the availability of a declaratory judgment:

> The remedy of declaratory judgment may be available to a litigant when a controversy exists as a result of a claim asserted against one who has an interest in contesting such claim, the controversy is between persons whose interests are adverse, the party seeking declaratory relief has a legally protectable interest or right in the subject matter of the controversy, and the issue involved is capable of present judicial determination.

*Central Neb. Pub. Power v. Jeffrey Lake Dev.*, 267 Neb. 997, 1002-03, 679 N.W.2d 235, 241 (2004) quoting *Mullendore v. Nuernberger*, 230 Neb. 921, 434 N.W.2d 511 (1989). A declaratory

judgment cannot be used to decide the legal effect of a state of facts which are future, contingent, or uncertain. There must be an actual justiciable issue at the time the declaration is sought. *Mullendore v. Nuernberger*, *supra*.

Neb. Rev. Stat. § 25-21,154 (Reissue 2008) provides that a court may refuse to render or enter a declaratory judgment where such judgment, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding. The Nebraska Supreme Court has determined this provision indicates discretionary rather than mandatory power. See *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 268 Neb. 439, 684 N.W.2d 14 (2004). Under Nebraska case law, whether to entertain an action for declaratory judgment is within the discretion of the trial court. *Id*. Actions for declaratory judgments are not to be entertained where another equally serviceable remedy has been provided by law, nor are they to be used to create new causes of action or cumulative remedies. *Id*. Declaratory judgments are equally improper if there is pending, at the commencement of the declaratory action, another action or proceeding to which the same persons are parties and in which are involved, and may be adjudicated, the same issues involved in the declaratory action. See *Polk Cty. Rec. Assn. v. Susquehanna Patriot Leasing*, 273 Neb. 1026, 734 N.W.2d 750 (2007).

Based on the record before us in this case, we conclude the district court should have ruled on the declaratory judgment actions. Specifically, the district court should have determined the amount of the final payment due under the 2006 stock purchase agreement as well as the proper recipient of that payment. Additionally, the court should have addressed whether the life insurance proceeds Jamie received should be applied to the Heritage Bank loan. The court's failure to rule on these actions for declaratory relief constituted an abuse of discretion.

The relevant disputes in this case center on three written instruments: (1) the 2006 stock purchase agreement; (2) the consumer security agreement for the Heritage Bank loan; and (3) Monty and Jamie's divorce decree. All parties affected by these instruments are involved in the current proceeding. As to the dispute involving the final payment under the stock purchase agreement, Monty's estate asserted it was entitled to the final payment which it calculated to be $85,808.25. Heritage Bank and Jamie asserted the final payment should be paid to Heritage Bank and should be in the amount of $92,112.06 ($87,112.06 deposited in court plus $5,000 in loans to Monty). Regarding the life insurance proceeds, Monty's estate claimed the proceeds should be first applied to the outstanding Heritage Bank loan and then any remainder should pass into the estate. Jamie asserted that she had a contractual right to these proceeds and was not obligated to pay anything to Heritage Bank.

The resolution of these competing claims would have terminated any uncertainty as to the interplay among the stock purchase agreement, consumer security agreement, and the divorce decree. These issues were clearly capable of immediate judicial determination. Final resolution of these declaratory judgment actions would have terminated the controversy as to the amount remaining due under the stock purchase agreement and the party entitled to this payment, and would have terminated the necessity for multiple other cases growing out of this situation.

The nature of the proceedings in this case also support the conclusion that the district court erred in dismissing the declaratory judgment actions. The district court conducted a trial as to these actions during which both parties presented evidence in the form of documents and live testimony.

At that point, in the interests of preemptive justice and judicial efficiency, the court should have ruled upon the parties' claims rather than entering an order of dismissal. A review of recent Nebraska case law reveals that dismissal of a declaratory judgment action most often occurs during the pretrial process upon a party's motion to dismiss. See *Polk Cty. Rec. Assn. v. Susquehanna Patriot Leasing*, *supra* (motion for summary judgment treated as motion to dismiss); *State ex rel. Jacob v. Bohn*, 271 Neb. 424, 711 N.W.2d 884 (2006); *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, *supra*; *Continental Western Ins. Co. v. Farm Bureau Ins. Co.*, 2 Neb. App. 527 511 N.W.2d 559 (1994).

We reverse the district court's order of dismissal as to the declaratory judgment actions. Because the district court did not rule on the underlying merits of the parties' claims in the declaratory judgment actions, we remand the cause to the district court for its consideration and decision of those claims based upon the evidence previously presented at trial.

*Unjust Enrichment*.

Monty's estate also assigns error to the district court's determination that Jamie was not unjustly enriched through her receipt of the life insurance proceeds. The estate asserts that justice and fairness required the district court to enter judgment in favor of Monty's estate and against Jamie in the amount of the unpaid Heritage Bank loan. The estate further contends that the property settlement in the divorce decree becomes unconscionable if Jamie is allowed to retain the insurance proceeds. In response to those arguments, Jamie maintains that she cannot be unjustly enriched by asserting a contractual right.

Unjust enrichment has been defined to mean a "transfer of a benefit without adequate legal ground." *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 866, 809 N.W.2d 725, 743 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 1, comment b. (2011)). To recover on an unjust enrichment claim, a plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff. See *Kanne v. Visa U.S.A.*, 272 Neb. 489, 723 N.W.2d 293 (2006). However, one who is free from fault cannot be held to be unjustly enriched merely because one has chosen to exercise a legal or contractual right. See *Wrede v. Exchange Bank of Gibbon*, 247 Neb. 907, 531 N.W.2d 523 (1995).

We agree with Jamie that her receipt of the life insurance proceeds did not constitute unjust enrichment. The property division in the divorce decree unambiguously required Monty to maintain Jamie as the beneficiary under the two life insurance policies. As the beneficiary under those policies, Jamie was legally entitled to the proceeds upon Monty's death. Because Jamie has chosen to exercise her rights under the divorce decree, she cannot have been unjustly enriched by retaining the life insurance proceeds.

Additionally, Jamie does not have any obligation to Monty's estate to satisfy the Heritage Bank loan. While Monty and Jamie both signed the promissory note and consumer security agreement to obtain this loan, the divorce decree required Monty to solely assume this debt. Jamie may still have some obligation to Heritage Bank due to her status as a co-borrower, but we are not called upon to decide that issue in this appeal.

The district court did not err in its determination that Jamie was not unjustly enriched by retaining the life insurance proceeds.

*Interpleader Action.*

The parties also agree that the district court erred in dismissing the interpleader action. Their arguments in support of this assigned error mirror those raised in support of their claims that the district court erred in its dismissal of the declaratory judgment actions. That being the case, and for the same reasons as discussed above relating to the declaratory judgments, we determine the district court erred in dismissing the interpleader action and that upon remand, the court should determine the interpleader issue based upon the evidence previously presented at trial.

*Cross-Appeal.*

Jamie and Heritage Bank have perfected a cross-appeal, assigning errors which relate to the court's refusal to enter a declaratory judgment, failure to order the interpleader funds paid to Heritage Bank, and refusal to determine the correct amount owed under the stock purchase agreement. Because we have already addressed those issues above, no further discussion is required here.

## CONCLUSION

We affirm the district court's determination that Jamie Mamot was not unjustly enriched. However, we reverse the court's dismissal of the declaratory judgment and interpleader actions and remand the cause with directions for the court to consider and decide the merits of the parties' claims based upon the evidence previously presented at trial.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.